DANIEL L. DAVIS v. CLARENCE V. SEELEY.

[See 68 Mich. 303, 389, 454.]

*Bills and notes — Void consideration — Good-faith holder — Notice.*

1. Negotiable instruments, fair on their face, which have, before maturity, passed into the hands of *bona fide* holders for value, will be enforced in their hands, although non-enforcible as
   71 MICH. 14.

between the original parties on grounds of public policy; but if declared void by statute they are void as against the party who gave them, and in the hands of all other parties.

2. To defeat a recovery by the holder of commercial paper purchased for value and before maturity, he must be shown to have had knowledge of such facts and circumstances as would make his purchase of the paper with the intention of enforcing it an act of bad faith.   *Miller v. Finley*, 26 Mich. 254; *Howry v. Eppinger*, 34 Id. 29; *N. Y. Iron Mine v. Citizens' Bank*, 44 Id. 352; *Mace v. Kennedy*, 68 Id. 389.[1]

Error to Oakland. (Moore, J.)  Argued June 14, 1888. Decided July 11, 1888.

*Assumpsit* on "Red Lyon Wheat Note."  Defendant brings error.  Affirmed.  The facts are stated in the opinion.

*Cass E. Herrington* and *Theo. Hollister*, for appellant.

*Peter B. Bromley*, for plaintiff.

[The points of counsel, and authorities cited, are stated in the opinion.—REPORTER.]

CHAMPLIN, J.   Plaintiff recovered judgment before a justice of the peace against defendant upon a promissory note dated August 18, 1886, for $75, payable to C. H. Williams, or bearer, due on or before one year from date, and signed by defendant.   Defendant appealed to the circuit court for Oakland county, where a trial was had, and resulted in a verdict for plaintiff.

The suit was defended on the ground that the note was given as part of a scheme to defraud the public, and was illegal and void as against public policy, and that such facts were well known to plaintiff at the time he purchased the same.

---

[1] See *Sutton v. Beckwith*, 68 Mich. 303; *Mace v. Kennedy*, Id. 389; and *McNamara v. Gargett*, Id. 454,—for Bohemian note cases.

The defendant is a farmer residing in Oakland county. The plaintiff is an attorney at law, and is also engaged in buying and selling notes, loaning money, dealing in tax titles, trading farms, and other speculations.

On August 18, 1886, one Sherwood and another person, representing themselves as agents of the Ohio & Great Western Seed Company, went to defendant's farm, where he was in the field plowing, and told him they would like to sell him some "Red Lyon wheat;" told him where they had sold wheat the previous year, and that they had always sold for parties as they agreed; and they unfolded to him the scheme for cheating the gullible portion of the agricultural community by selling wheat to them at speculative prices. They exhibited to him the bond, which he read and perfectly understood, which they proposed to give him if he would give them his notes for 15 bushels of wheat. The bond, with the indorsements thereon, discloses the whole scheme, and we therefore give the contents entire, to wit:

"No. 595.    Capital Stock, $50,000.00.
"This Bond is Used for Wheat Only.
"Incorporated July 21, 1885, under the state laws of Ohio, for the production and sale of grain.
"HOME OFFICE, NAPOLEON, O., U. S. A.
"Bond of the Ohio & Great Western Seed Company.

"It is agreed and understood by and between the party named in this bond and said company that the transaction covered by this obligation is of a speculative character, and is not based upon the real value of the grain.

"Mr. C. V. Seeley, of Oakland county, Southfield township, witnesseth, that on or before the 18th day of July, A. D. 1887, we hereby agree to sell thirty (30) bushels of Mr. C. V. Seeley wheat, at $15 per bushel, and for which he agrees to take his pay in notes. And the said Mr. C. V. Seeley hereby acknowledges that he has bought of the said company fifteen bushels of the Red Lyon wheat, at $15 per bushel, as a speculation, and for which he has given his note for the same, and that said price is not based upon its real value. And the said Mr. C. V. Seeley hereby agrees to allow the

said company 33⅓ per cent. of all notes taken for all of his wheat sold at $15 per bushel, as their commission.

"Signed and sealed this 18th day of August, 1886.

"THE OHIO & GREAT WESTERN SEED COMPANY,
"Per C. H. Williams, Secretary.

"The Ohio & Great
     [Seal]          Attest: J. B. AUGENSTEIN, President.
"Western Seed Company.          C. V. SEELEY, Purchaser."

On the back of said bond is the following:

"Capital Stock, $50,000.00.    Constitution and By-Laws.
     The Ohio & Great Western Seed Co.

"This company was incorporated under the laws of the state of Ohio governing stock companies, July 31, 1885, recorded in volume 33, page 60, of the Records of Incorporation. The following rules were adopted by the company for the sale of wheat:

"SECTION 1. All bonds shall be signed and sealed by the secretary of the company, and attested by the president, and this company will be responsible for their business transactions according to the laws made and provided for governing stock companies in the state of Ohio, and under which this company was incorporated.

"SEC. 2. All purchasers of wheat shall receive a bond agreeing to sell double the amount of wheat purchased, at $15 per bushel, a speculative value. Each purchaser hereby agrees to allow the said company one-third of all notes taken for all his wheat sold at $15 per bushel, as their commission.

"SEC. 3. If any purchaser of wheat from this company fails to raise the amount specified in his bond, the said amount shall be furnished him free of charge, and sold the same as specified in the bond.

"SEC. 4. There shall be no less than 10 nor more that 30 bushels of wheat sold to any one purchaser, or to more than five in any one township in one year.

"SEC. 5. All wheat shall be sold by the company at $15 per bushel to good and responsible parties, and the said company shall receive a commission of 33⅓ per cent., payable in notes.

"SEC. 6. It must be further agreed by said purchaser that he will do all he can to promote the interest and assist in the sale of grain in this company, and that he will report to the office of the company any bad conduct

or misdemeanor on the part of any agent representing said company.

"Sec. 7. All communications concerning the business of this company shall be addressed to The Ohio & Great Western Seed Co., Napoleon, Ohio."

The wheat was furnished defendant as agreed, which he sowed, and harvested about 12 bushels to the acre, but the Ohio & Great Western Seed Company has never appeared to Mr. Seeley since. The man who signed his name as " C. H. Williams, Secretary," sold the notes given by defendant, soon after the date thereof, to the plaintiff in this suit, together with several others made by farmers in the vicinity.

Several exceptions were taken to the rulings of the court upon the admission and rejection of testimony. We find no error in such rulings, and they were not of sufficient importance as to require discussion here. Aside from the refusal to give certain instructions requested by counsel for defendant, the important question upon this record is whether the note sued upon is void, in the hands of an innocent holder for value, as being against public policy; and whether, upon this issue, the refusal of the court to charge as requested by counsel for defendant, and the charge as given, were proper.

The scheme, upon its face, was a transparent fraud. The design to defraud third parties was mutual, and entered into with a common understanding between the parties. The gains to be derived by the defendant were dependent upon duping others into purchasing on a speculation in the same manner that defendant was duped, and he agreed and entered into a scheme by which two or more persons were to be defrauded, and the plunder divided, two-thirds to him, and one-third to his confederates.

A similar scheme was declared by this Court in *McNamara v. Gargett*, 68 Mich. 454 (36 N. W. Rep. 218), to be against public policy, and void as between the par-

ties, and as to purchasers of notes with notice of the consideration.

There is a distinction between contracts which are void between the immediate parties because they will not be enforced on grounds of public policy, and contracts where the statute declares them void. In the first class, negotiable instruments, fair on their face, which have, before maturity, passed into the hands of *bona fide* holders for value, will be enforced in the hands of such holders; but in the other class they are void as against the party who gave them, and in the hands of all other parties. *Edwards v. Dick,* 4 Barn. & Ald. 212; *Towne v. Rice,* 122 Mass. 71; *Aurora v. West,* 22 Ind. 88; *Eagle v. Kohn,* 84 Ill. 292; *Cowing v. Altman,* 71 N. Y. 435.

At the time the note in question was given and transferred to the plaintiff, there was no statute of this State declaring such notes void. It is therefore good in the hands of an innocent holder for value before maturity, and without notice or knowledge of the transaction in which it originated.

The following requests were presented to the court by counsel for defendant, and upon the refusal to give the instructions as requested error is assigned:

"4. Actual notice to the plaintiff, when he purchased this note, that it was given for an illegal consideration, is not necessary to defeat his recovery. If he had notice or knowledge of such facts and circumstances in relation to what the note was given for as to make his purchase of it an act of bad faith, then he cannot recover."

"6. If the plaintiff, when he purchased this note, from facts and circumstances within his knowledge relative to the consideration of the note, had good reason to and did believe that it was given upon an illegal consideration, he cannot recover.

"7. If the jury find that, at the time plaintiff purchased this note, he did not know the exact terms or consideration upon which it was given, yet, from circumstances of which he had notice, he did know, believe, or

have good reason to believe, that it was tainted with fraud or illegality, then he cannot recover.

"8. Unless the plaintiff has satisfied you by a preponderance of proof that, at the time he purchased this note, he did not know, have notice, believe, or have good reason to believe, that it was tainted with fraud or illegality, and did not know or have notice of facts or circumstances impeaching its validity, he cannot recover."

In response to the several requests presented by the counsel for the defendant, the circuit judge charged the jury as follows:

"The plaintiff cannot recover in this case unless he is a *bona fide* holder; and if you find from the evidence that, at the time plaintiff purchased this note, he knew the circumstances impeaching its validity, then plaintiff cannot recover.

"This note is void as between the parties thereto, that is, as between defendant and C. H. Williams, for the reason that it was given for an illegal consideration, and plaintiff cannot recover unless he is a *bona fide* holder.

"If the jury find that the consideration upon which the note was given was the bond of a company, whereby the company agreed to sell ordinary wheat under the fictitious name of Red Lyon wheat, at the speculative value of $15 per bushel, whereas its real value was not to exceed $1 per bushel, then such notes are void, and plaintiff cannot recover if, at or before the time he purchased it, he had knowledge or notice that this note was given on such consideration.

"If the plaintiff had notice or knowledge of such facts and circumstances in relation to what the note was given for, as to make his purchase of it an act of bad faith, then he cannot recover.

"The fact that plaintiff paid value for the note is not sufficient of itself to make him a *bona fide* holder. Although he may have paid value, still he is not entitled to recover if he had notice or knowledge of facts or circumstances impeaching its validity.

"If the jury find that, at the time plaintiff purchased this note, he did not know the exact terms or consideration upon which it is given, yet from circumstances of which he had notice he knew that it was tainted with fraud or illegality, then he cannot recover.

"Unless the plaintiff has satisfied you by a preponderance of proof that, at the time he purchased this note, he did not know or have notice that it was tainted with fraud or illegality, and did not know or have notice of facts or circumstances impeaching its validity, he cannot recover."

He also charged the jury upon the right of the plaintiff to recover under the testimony in the case as follows:

"On the part of the plaintiff, I charge you as follows: That this note is negotiable, and subject to all the rules as to negotiable paper, and may become the property of the holder by mere purchase and delivery.

"That the law will sustain the claim of an innocent, *bona fide* holder of a negotiable promissory note for a valuable consideration, purchased before due, however viciously other parties may have acted, or whatever objection to the consideration may arise. If the jury finds that the plaintiff purchased this note before it became due, innocently, and for a valuable consideration, before maturity, by giving money for it in the usual course of business, he is entitled to recover on it.

"That the possession of a note payable to bearer, unaccompanied by any declaration or other evidence in regard to it, is *prima facie* evidence that the holder is the owner of it; that he took it for value before it became due, and in the regular course of business,—that is to say, if simply this note had been offered in evidence, and then both parties had rested, it would have been your duty, of course, to have rendered a verdict for the amount of the note, with the interest on it; and that is what I desire to say by this request with reference to its being *prima facie* evidence. But, after the note is in, then it is entirely competent to do what has been done in this case,—to give other evidence both as to the facts and circumstances, and oral testimony, for the purpose of determining the *bona fides* of the transaction. If there is nothing upon the face of a negotiable note to notify the purchaser that the note was originally given upon an illegal consideration or through fraud, the purchaser who pays value therefor, and takes it in good faith before maturity, may recover as against the maker. This is true, even though the purchaser be in possession of facts

and circumstances sufficient to arouse suspicion in the minds of persons of ordinary prudence.

"And in this connection I desire to say that just a mere suspicion that there may be something wrong is not sufficient to defeat it; that, if the plaintiff purchased this note before due, without knowledge of any defect of title or defense to it, and for a valuable consideration, he will take a good title, unaffected by any of the defenses now set up by the defendant. Suspicion of the defect of title, or knowledge of circumstances which would excite suspicion in the mind of a prudent man, will not defeat his title alone; that is, mere suspicion itself will not do so. A holder of negotiable paper who takes it before maturity, for a valuable consideration, in the usual course of business, without knowledge of the facts which impeach its validity as between antecedent parties, is deemed a *bona fide* holder.

"That a party about to purchase a promissory note is under no obligation to call upon the maker, and make inquiry as to possible defenses which he may have, and of which the purchaser has no notice, either from something appearing on the face of the paper, or from facts communicated to him at or before the time of the purchase. That is to say, when a paper is presented to a man entirely free from anything on the face of the paper, or free from any knowledge which he may have which would go to impeach its validity, he is under no obligation to go and look the man up, and make inquiries in reference to it.

"The fact that the note was purchased by the plaintiff at a discount was nothing unusual or contrary to the usual manner in which those engaged in discounting notes transact that kind of business, and is no evidence, of itself, of bad faith on the part of the plaintiff. But I desire to say, in that connection, that the fact that it was purchased at a discount may be taken into consideration, with all the facts and circumstances, as bearing upon the question of good faith. Bad faith or fraud cannot be presumed without proof. That is undoubtedly true, but the proof may be not only oral testimony, but it may be acts and facts and circumstances which appear in evidence in the case where the question is involved. * * * The fact that defendant knew, when he gave his note, that the wheat was not worth the price he was paying for it, and went into the transaction as a speculation, would not legalize

the transaction, and cannot in any way help plaintiff to recover.

"There has been something said in the argument of counsel with reference to Mr. Seeley's acting in bad faith in this matter, and I desire to say to you in this connection that it does not make any difference whether Mr. Seeley was acting in just as bad faith in connection with this matter as was Mr. Williams, so far as this case is concerned. The courts hold—and I desire to emphasize that fact to you now—that the contracts like this, as between the original parties, are absolutely void ; and they are held so, not for the advantage of either individual who is connected with the matter, but for the advantage of the public,—that it is against public policy that they should be sustained by the courts. And whether Mr. Seeley expected to make a good deal of money, or whether he was acting in entire good faith, does not make any difference so far as this case is concerned. The question for you to consider in this case is, was the plaintiff acting in good faith? Did he buy this note before maturity, for a valuable consideration, without notice of the defense? That is the important question for you to consider when you shall attempt to get at your verdict.

"If, from the facts and circumstances surrounding this case, you are satisfied that plaintiff's statement in relation to his knowledge about what the note was given for is false, you are under no obligation to believe him, even though uncontradicted by oral proof. Unless his testimony has convinced your reason, you may reject any part of it, or reject it altogether. What is true of him is true of any witness in the case. In passing upon the truthfulness of his statement, you may take into consideration his acts, and all the facts and circumstances involved in the case.

"In this case the burden is upon the plaintiff to satisfy you by a preponderance of evidence that, at the time he purchased the note in question, he did not have knowledge or notice of the consideration upon which it was based."

The particular complaint made by counsel for defendant against the charge of the court is that the court did not, in terms or substantially, charge the jury that if the

plaintiff, when he purchased the note, from facts and circumstances within his knowledge relative to the consideration of the note, had good reason to and did believe that it was given upon an illegal consideration, he cannot recover.

The important part which negotiable paper performs in the business transactions of a commercial people makes it of the utmost importance that the rules which govern its transfer from one to another, and the rights of the holder, should be uniform and stable. It should not be subjected to new tests concerning its negotiability and validity in the hands of innocent holders for value.

In England, prior to 1820, it was pretty generally held that bad faith alone would prevent a holder for value from recovering upon commercial paper. In *Gill v. Cubitt*, 3 Barn. & C. 466, under the influence of Lord Tenterden (see *Slater v. West*, 3 Car. & P. 325), due care and caution was made a test. In 1834 the king's bench held that nothing short of gross negligence could defeat the title of a holder for value. *Crook v. Jadis*, 5 Barn. & Adol. 909. But Lord Denman, in 1836, in the case of *Goodman v. Harvey*, 4 Adol. & E. 876, reasserted the doctrine, which has since been held in England, that bad faith alone could disentitle a holder for value to recover; that gross negligence might be evidence of bad faith, but was not conclusive of it.

This doctrine is now firmly established in the United States. *Murray v. Lardner*, 2 Wall. 110; *Collins v. Gilbert*, 94 U. S. 753; *Farrell v. Lovett*, 68 Me. 326; *Bank v. Bank*, 10 Cush. 488; *Chapman v. Rose*, 56 N. Y. 140; *Johnson v. Way*, 27 Ohio St. 374; *Shreeves v. Allen*, 79 Ill. 553; *Kelley v. Whitney*, 45 Wis. 110; *Miller v. Finley*, 26 Mich. 254; *Howry v. Eppinger*, 34 Id. 29; *Hamilton v. Vought*, 34 N. J. Law, 187; *Welch v. Sage*, 47 N. Y. 143; *Oats v. Bank*, 100 U. S. 239.

In *Miller v. Finley*, Mr. Justice CAMPBELL said:

"There is nothing on the face of the paper to cast suspicion upon its character, and it can only be impeached, in the hands of a holder for value, by evidence that he took it under circumstances which rendered him guilty of bad faith. The proof must show that the holder for value, who takes a note with no ear-marks of fraud or illegality, has had notice of such a nature that he could not honestly take the paper without further inquiry. The facts of which he must have either knowledge or notice must be such as go to the defects of title."

If we should adopt the test contended for by defendant, namely, that if, from facts and circumstances within his knowledge relative to the consideration, the purchaser had good reason to and did believe that it was given upon an illegal consideration, he cannot recover, it would introduce a new element of uncertainty in the legal title of negotiable paper, and permit a jury to speculate upon the effect facts or circumstances within the knowledge of the holder of such paper produced upon his mind, and whether he had good reason to believe or did believe it was given upon an illegal consideration.

Facts and circumstances innocent in themselves, and insufficient to raise a suspicion of fraud or illegality, might be deemed by one jury sufficient grounds for belief, while another would require very plain indications of fraud or unfair dealing. We think the rule which has been so long and so universally established among English-speaking people is broad enough to protect the rights of parties to such paper. Baron Parke, in the case of *May v. Chapman*, 16 Mees. & W. 355, said:

"I agree that 'notice and knowledge' means, not merely express notice, but knowledge, or the means of knowledge, to which the party willfully shuts his eyes."

And Chief Justice Beasley, in *Hamilton v. Vought, supra,* said:

"Mere carelessness in taking the paper will not of itself impair the title so acquired, but carelessness may be so gross that bad faith may be inferred from it. Nor is it necessary, in order to defeat the title of the holder, that he have actual knowledge of the facts and circumstances constituting the particular fraud. It is sufficient if he have knowledge that the paper is tainted with any fraud, although he may be ignorant of the nature of it."

We think the court covered the whole law of the case in his instructions to the jury. The testimony was conflicting. If the jury believed the plaintiff, they would be justified in finding for the plaintiff; and also, we think, there was testimony which would have justified them in finding that he was a bad-faith holder. The defendant did not occupy a position which was calculated to influence the jury in going a great ways to relieve him of an obligation which he had voluntarily assumed with the intention of imposing a fraudulent scheme upon his fellow-townsmen.

We discover no error in the record, and the judgment is affirmed.

MORSE and CAMPBELL, JJ., concurred with CHAMPLIN, J.

SHERWOOD, C. J., (*dissenting*). In this case I am not able to agree with my brethren in the opinion they have filed.

The law-merchant, I am aware, is a part of the law of the land, and courts are bound to take notice of it, and apply it to cases involving its principles. But in making such application we should never forget that, like other rules of law, it was adopted to secure the rights of men' in their business transactions one with another; and any application of it which does not do this, but destroys such rights, is an improper application of that law, or any other.

The note sought to be enforced in this case was obtained

from the maker without any consideration whatever, and through one of the grossest schemes of fraud practiced upon the agricultural community known to the present generation. It has been made a crime by statute, and punished as a felony. This Court has denounced the transaction as against public policy, and the law has forbidden it. To hold that a note coming into existence under such circumstances can be held valid in any person's hands, or under any condition, is, in my judgment, in violation of the rule imposed by commercial law, and converts the court into an engine of wrong and oppression every time such a contract is enforced by it.

This Court has held that there can be no *bona fide* holder of a note put in circulation without being first delivered; and it is elementary doctrine that all contracts which contravene the general policy of the common law, or the positive provisions of any statute, are void. And I think, in this class of cases, the note should be treated as declared void by statute, and held to be so, to all intents and purposes, as to all parties. It is no hardship for the purchaser to ascertain from the holder the character of the consideration before he receives such paper. Certainly it can be no more so than to ascertain the fact of whether or not the note has ever been delivered. He may always take it relying upon the presumptions of honest dealing; but, if an infirmity lies back of that, the holder should take the risk in this class of notes. It is the only application of the law which will ever be effectual in carrying out the intentions of the Legislature and preventing the evil. In my opinion, it should be done, and the judgment in this case should be set aside, and the case dismissed out of court.

LONG, J., did not sit.