WILLIAM LEHMAN, Appellant, v. E. M. PRESS.

**Bills and Notes:** GOOD FAITH BUYER: *Evidence.* A negotiable note can be impeached in the hands of a holder for value before maturity only by direct or circumstantial evidence that he took the paper

with knowledge of its infirmities, or under circumstances indicative of such wilful neglect to inquire, or such gross carelessness in failing to do so when inquiry would have led to knowledge which would establish bad faith, but the fact that he was merely put on suspicion or was careless in not making inquiry is not sufficient.

INSTRUCTIONS: *Curing with.* An instruction which erroneously lays down a rule for finding the existence of bad faith on the part of a purchaser of a note is not cured by other instructions informing the jury of the necessity of finding bad faith.

RULE APPLIED. Error in charging that facts which would merely put a reasonable man on inquiry will charge an indorsee with notice of fraud in the inception of a note is not cured by a charge that something more than mere negligence in failing to discover fraud was necessary to defeat the holder's recovery, that bad faith must be shown, and that if the holder had notice of the want of consideration, defendant might prove that there was none.

Indorsements: FOR COLLECTION: *Rights of indorsee.* A note was indorsed by the payee; also, "For collection, acct. G. D. & Co.;" also, "For collection, and return to" a certain bank. Suit was brought thereon by a member of a firm individually; and defendant plead that the note was without consideration, had been transferred to plaintiff and by him sued, to cheat defendant. *Held,*

a That the firm's indorsement did not tend to show that the firm had delivered the note to plaintiff for collection.

b Defendant could not show that plaintiff had purchased the note as agent for a third person, who afterwards delivered it to him for collection.

c One to whom a note is indorsed for collection may sue thereon.

*Appeal from Lucas District Court.*—HON. M. A. ROBERTS, Judge.

SATURDAY, OCTOBER 15, 1898.

ACTION on six promissory notes. Trial to jury, verdict and judgment for defendant, and plaintiff appeals.—*Reversed.*

*J. C. Mitchell* and *G. G. Fancher* for appellant.

*Stuart & Bartholomew* for appellee.

LADD, J.—The six notes sued on were executed by the defendant to Mayer, Engle & Co., March 15, 1895, and are

for the payment of one thousand and fifty dollars. The defense interposed was want of consideration, of which plaintiff had notice, and that he was not the real party in interest. The first note became due April 29, 1895, and is indorsed, "Without recourse. Meyer, Engle & Co." The other five notes fell due a month apart, beginning with May 29, 1895, and upon each are the following indorsements: "Without recourse. Mayer, Engle & Co.;" "For collection, acct. Gage, Downs & Co.;" "For collection and return to Nat'l Bank of Republic, Chicago. W. T. Fenton, Cashier." The plaintiff testified that he purchased these notes of Mayer, Engle & Co., April 30, 1895, and paid therefor by check of one thousand dollars, afterwards cashed, signed Gage, Downs & Co., of which firm he was a member. The eighth instruction is based on this evidence, and is as follows: "If you find from the evidence that on the 30th day of April, 1895, the plaintiff, as the agent of Gage, Downs & Co., purchased the notes in controversy for said Gage, Downs & Co., and paid for them with the money and means of said Gage, Downs & Co., and afterwards said Gage, Downs & Co. indorsed said notes and delivered them to a bank, and afterwards said Gage, Downs & Co. delivered said notes to the plaintiff for collection for their benefit only, then you are instructed that, under such findings and facts, the plaintiff would not be a purchaser of said notes for value, and defendant would have the right to interpose any defense she had thereto, the same as if suit had been brought thereon by Mayer, Engle & Co., the original payees of said notes."

It will be observed that the evidence tended to show the purchase of the notes the day after the first was due, but before the expiration of the three days of grace, and therefore before maturity. *Crosby v. Grant,* 36 N. H. 273. As to this note, there was no evidence whatever of any transfer except by Mayer, Engle & Co., and, as applied to it, the instruction is unquestionably erroneous. As to the other notes, it can rest on inference only, to be drawn from the

indorsements, that the notes were purchased by giving the check of Gage, Downs & Co., instead of his own. The indorsements were circumstances to be considered in determining whether the plaintiff was owner; but·such indorsements had no tendency to show that Gage, Downs & Co. had delivered the notes to the plaintiff for collection or for any other purpose. Besides, there is no such issue in the pleadings. The defendant expressly alleges that they were transferred by Mayer, Engle & Co. to plaintiff, and that he instituted suit thereon at their request, to aid them in cheating the defendant. But suppose that the plaintiff was acting for Gage, Downs & Co., and that the notes were purchased by that firm, the rule announced cannot be sustained. One to whom a note is indorsed for collection may maintain an action thereon. *Bond Co. v. Hurd,* 85 Iowa, 559; *Cottle v. Cole,* 20 Iowa, 481. While the note is subject to defenses interposed by the payor against the principal, such defenses must be made in order to defeat recovery. If the plaintiff purchased the note for Gage, Downs & Co., and brought this action for their benefit, and value was paid without notice of the note's infirmities, and in good faith, the defense must fail. *Farwell v. Tyler,* 5 Iowa, 535. As affecting the rights of the payor, it is immaterial whether the principal or agent brings the action.

Exception was taken to the seventh instruction: "In order to sustain defendant's claim, it is not necessary that the evidence show that plaintiff had express, actual notice that said notes were without consideration. It will be sufficient if the circumstances brought home to the plaintiff are of such a strong and pointed character as would necessarily cast a shade upon the transaction and put him upon inquiry. If the circumstances attending the transfer of the notes were such as to necessarily put the plaintiff on his guard, or if he must have known therefrom that Mayer, Engle & Co. had no right to transfer said notes, then he was bound to make inquiry, and, if he did not, he took them at his peril." This seems to have been

taken from the opinion in *Trustees v. Hill,* 12 Iowa, 462, with the important limitation contained in this sentence omitted: "They are not to be charged with notice because of any want of diligence on their part in making inquiry, or even if they took the note under suspicious circumstances, provided they had no notice, actual or constructive, of the alleged equities subsisting between Lambright and Hill." That case was referred to in *Lane v. Evans,* 49 Iowa, 156, and an instrction similar to that given condemned. It was there said: "Facts which would have put a reasonable man upon inquiry will not charge the indorsee with notice of fraud in inception of the note." As stated in *Lake v. Reed,* 29 Iowa, 258: "The distinction is this, to wit: The rule of law requires proof, direct or by circumstances, that the holder had notice of the defect or equities; whereas the rule as stated in the instruction only requires proof that the holder was in such a situation as that he might have had notice if he had been diligent in making inquiries which his situation offered and invited him to make." Because of the commercial character of negotiable paper, and the need of sustaining its negotiable quality, it cannot be impeached in the hands of a holder for value before maturity, unless acquired under circumstances such as indicate actual fraud by the party taking it. The fact that he was merely put on suspicion, or was careless in not making inquiry, is not sufficient. He must be shown, by direct or circumstantial evidence, to have taken the paper with knowledge or notice of its infirmities, or the circumstances must be such as indicate willful neglect to inquire, or such gross carelessness in failing to do so, when inquiry would have led to such knowledge, as shall establish bad faith. This rule has been adopted in this state, and is in harmony with that of England and the great weight of authority in this country. *Richards v. Monroe,* 85 Iowa, 359; *Cook v. Wierman,* 51 Iowa, 561; *Gage v. Sharp,* 24 Iowa, 15; *Davis v. Seely,* 71 Mich. 209 (38 N. W. Rep. 901); *Bank v. Young,* 41 N. J. Eq. 531 (7 Atl. Rep. 488); *Murray v. Lardner,* 2 Wall.

110; *Goodman v. Harvey,* 4 Adol. & E. 870; 4 Am. & Eng. Enc. Law, 299.

The appellant urges that the defect in this part of the court's charge was cured by paragraphs 5 and 9. The fifth instruction correctly advised the jury that something more than mere negligence in failing to discover fraud was necessary to defeat the holder's recovery,—that bad faith must be shown,—while the ninth instruction was to the effect that, if he had notice of the want of consideration, the defendant might prove that there was none. It will be readily seen that these instructions informed the jury of the necessity of finding bad faith, while No. 7 laid down a rule for finding its existence. The instructions would not be con· strued by the jury as essentially in conflict, but the conclusion reached that bad faith might be inferred as stated in the seventh paragraph of the charge. Because of the errors pointed out the judgment must be REVERSED.