## Knox vs. Cleveland.

On appeal to this court, an exception taken by the respondent is not properly a part of the record, and the question raised by it is not before this court for review, unless the respondent also tendered his bill of exceptions and appealed.

The right of a party to property adversely held and claimed by another, is cut off by his neglect to bring suit within the period prescribed by the statute of limitations; such neglect operates to transfer it to the adverse claimant, and the legislature cannot, by a repeal of the statute or otherwise, restore the right and give a remedy to enforce it.

The construction given to section 123 of chapter 15, R. S. 1849, is, that whichever party was under the necessity of suing, during the time limited, in order to obtain actual possession of the premises in dispute from the other, must have commenced his action within that time, or he was barred; but when neither party was in actual possession, the original owner, or party in default for the non-payment of the taxes, was, by his failure to bring his action within the period prescribed, against the grantee in the tax deed or those claiming under him, precluded from maintaining it afterwards.

As it was necessary, where the premises were actually occupied by either party under claim of title, that the other party should bring his action within the time prescribed, the question which was in possession becomes material in order to determine in whose favor the limitation is to be applied.

Hence in an action by the original owner, to recover property sold for taxes, and claimed by the defendants under a tax deed recorded in February, 1855, it was competent for the plaintiff to show that during three years next after the recording of the tax deed, he had been in the actual exclusive possession of the property in dispute.

June Term,
1860.

KNOX
v.
CLEVELAND.

Where the premises are unoccupied, the recording of the tax deed is such a claim of title on the part of the holder as enables the original owner, if he desires to contest its validity, to bring an action against him for that purpose.

When the holder of the tax title has become entitled to the protection of the statute, all questions as to the regularity of the tax proceedings are set at rest, except those which concern the power and jurisdiction of the taxing officers, or the liability of the land to taxation.

The tax deed then becomes conclusive evidence that the taxes were properly levied, and that all taxable property within the district was duly assessed.

Whether the holder of the tax title would forfeit the protection of the statute, if, by fraud or artifice, he should induce his adversary to delay the commencement of a suit, *quære*.

APPEAL from the Circuit Court for *Milwaukee* County. This was an action commenced in September, 1859, for the recovery of a lot in the city of Milwaukee. The plaintiff introduced evidence tending to show a regular chain of title to the lot in controversy from the U. S. to himself; to the admission of certain portions of which evidence the defendant objected, and the objection being overruled, excepted. The defendant admitted his possession of the lot at the commencement of the suit, and introduced in evidence a paper purporting to be a tax deed by the city of Milwaukee and the state of Wisconsin, to him for the lot, dated February 21, 1855, and recorded on the 23d day of the same month. The deed recited that the land had been sold for the non-payment of the county, state, school and city taxes for the year 1851. The plaintiff objected to the admission of the deed in evidence, on the grounds that the statutory pre-requisites to authorize its issue had not been complied with, and that there was no law in 1851, authorizing the assessment and levy of such taxes as are mentioned in the deed; but the objection was overruled. The defendant, as a witness for himself, testified to various facts tending to show that he was in possession of the lot by a tenant during a part of the three years next after the recording of the tax deed, and at the expiration of that period, from which, he insisted, a presumption arose that he was in possession during the whole of the three years. The plaintiff's counsel then offered to prove that the defendant was not in possess-

ion of the lot, or any part of it, on the 21st of February, 1858, nor at any time from 1851 to the month of April, 1859, either personally or by his tenant, and especially that he was not in possession by tenant or otherwise during any part of the three years next after the recording of the tax deed, but that the plaintiff had been, in exclusive possession of the lot from 1851 to April, 1859. The evidence was objected to by the defendant, and the objection sustained. The plaintiff then offered evidence to show that certain sections of land included within the limits of the city, were, for the year 1851, deliberately and purposely omitted in the levy, assessment and collection of all taxes authorized by the city charter, except for school, poor and highway taxes, while at the same time all other real estate and taxable property, including the lot in controversy, were taxed for general city and ward purposes, &c.; but this evidence was excluded by the court. The court charged the jury that they must find a verdict for the defendant. Verdict accordingly. Motion for a new trial, on the ground that the court erred in rejecting the rebutting testimony offered by the plaintiff, and in the charge given to the jury, and that the verdict was against law and the evidence. Motion overruled. From the order overruling this motion, and from the judgment, the plaintiff appealed.

*O. H. Waldo*, for appellant, contended that the evidence offered by the plaintiff to prove that he was in possession of the lot in suit from 1851 to April, 1859, should have been admitted. 1. The other evidence produced by the plaintiff was sufficient to defeat the tax deed, except as that deed was a foundation for a plea of the three year statute in bar. *Knowlton vs. Supervisors of Rock Co.*, 9 Wis., 410. 2. The statute does not apply in such a case as the present, where it affirmatively appears that there was no tax, and that therefore this is not a suit "for the recovery of land sold for taxes." 3. If it could apply at all, it never commenced to run against the plaintiff, because he was in actual possession during the whole of the three years immediately succeeding the recording of the tax deed, as well as long before and after. 4. While the plaintiff was still in possession, the act of

June Term, 1860.

KNOX
v.
CLEVELAND.

March 19, 1859 (chap. 197, Laws of 1859) went into effect, which gave him three years from that date to bring his action. Counsel referred to and distinguished the cases of *Edgerton vs. Bird*, 6 Wis., 527 ; and *Falkner vs. Dorman*, and *Falkner vs. Stevens*, 7 Wis., 388.

*Carpenter & Gridley*, for respondent.' [No argument on file.]

January 2.    *By the Court*, DIXON, C. J.   The first exception contained in the record is improperly there, and the questions raised by it are not before us for review.   It was taken by the respondent and not by the appellant, and the former not having tendered his bill of exceptions, and also appealed, it cannot be urged.   The point having been ruled in the appellant's favor, he is of course content, and the respondent by not settling his bill and appealing, as he might have done, must be deemed to have acquiesced in the ruling as correct. Such has always been the practice.   Errors can be assigned only by the party in whose favor the bill of exceptions is allowed, and who sues out the writ ; and if the opposite party has exceptions upon which he wishes to be heard, he must tender his cross-bill and have the same allowed by the judge, and sue out his writ also.   *Marston vs. Roe dem. Fox*, 8 Adolph. & Ellis, 14 (35 E. C. L., 303).   A like practice obtained on appeals in equity.   The court could decide only the objections taken by the appellant ; and if the other party felt himself aggrieved by any part of the decree from which the appellant did not appeal, he was obliged to bring his cross appeal in order to be heard upon it.   *Clowes vs. Dickenson*, 8 Cowen, 328; *Kelsey vs. Western*, 2 Comst., 500. The Code has wrought no change in these particulars, and we see no reason why the former rules should not still prevail.

The cases of *Sprecher vs. Wakely* [11 Wis., 432], and *Hill vs. Krieke*, [id., 442], decided at the present term of this court, seem decisive of the other questions raised, and show that the judgment must be reversed.   It was there determined, and the doctrine was sustained by numerous authorities referred to, that the right or title of a party to proper-

ty which was adversely held and claimed by another, was barred and cut off by his neglect to prosecute within the period prescribed by the statute of limitations; that such neglect operated to divest and transfer it to the adverse claimant; and consequently that the legislature could not, by a repeal of the statute or otherwise, restore the right and give to him a remedy to enforce it. The right being gone, of course the remedy fell with it; and as there could be no remedy without a corresponding right, it was useless for the legislature to restore the former, so long as it was prohibited by the constitution from interfering or meddling with the latter. Of the correctness of these principles we are still quite satisfied. Such neglect on the part of the owner to assert his title, and acquiescence in the adverse possession and claim of another, is and ever has been, in almost all civilized countries, a recognized method by which he may part with, and the other acquire such title. We can discover no inconsistency in the principles upon which the rule is founded. The law of limitation to actions is introduced for the public good, in order that title to property may not remain forever doubtful and uncertain, after allowing the owner sufficient time in which to pursue and establish his claim. Being chargeable with a knowledge of it, it is presumable that he conducts himself accordingly. By acquiescing in such adverse possession during the entire period, within which he can, by existing laws, assert his title, he in effect says, not only to the adverse claimant but to all the world, that he has no title. His behavior cannot be otherwise rationally explained, and there can be no injustice in saying to him, provided the person in adverse possession chooses not to open the controversy, that he must continue to occupy the position in which he has thus voluntarily placed himself.

The tax deed, under which the respondent claims title, having been recorded more than three years prior to the passage of the act of March 19th, 1859, the position of the parties was unaffected by that act, and their rights must be determined by the law as it stood at the time the period of limitation fixed by section 123 of chap. 15, R. S. 1849, expired. The suit was not commenced until after the expira-

tion of the same period. The construction which that section has heretofore received, is well understood. It is that as to all cases within its operation, it was like a two-edged sword and cut both ways; that whichever party was under the necessity of resorting to legal proceedings pending the time limited, in order to obtain actual possession of the premises in dispute from the other, must have commenced his action within that time or he was barred; and that where neither was in actual possession by himself or those claiming under him, the original owner or party in default for the non-payment of the taxes, was, by his failure to bring his action within the period prescribed, against the grantee in the tax deed, or those claiming under such title, precluded from maintaining it afterwards, and that henceforth the latter were to be considered as the real owners. This last point was decided in *Hill vs. Krieke*, upon the provisions of section 4, chap. 106, R. S., 1849, now found as section 3 of chap. 141 of the present revision, and the authority of *Banyer vs. Empie*, 5 Hill, 48, giving construction to a like section of the statute of New York, from which our own is borrowed. In that case it was decided that the legislature intended, by the section referred to, to change the old rule, and allow ejectment to be brought for the recovery of unoccupied lands; that a recovery being made conclusive of the right, it was done for the purpose of enabling the plaintiff to settle the right between himself and another claimant without the necessity of taking possession and then waiting for an action to be commenced by the other party. This change in the law of ejectment seemed to us to throw much light upon section 123, and to satisfactorily explain why it was that the recording of the tax deed was made the leading and prominent fact, from the occurrence of which the time began to run. It will be recollected that nothing was said about the possession, and that it apparently formed no element in the transaction, the recording of the tax-deed having been made the sole fact from which the limitation dated. The language was, that "any suit or proceeding for the recovery of lands sold for taxes," should be commenced within three years from that time. The recovery spoken of must, of course, be

June Term,
1860.

KNOX
v.
CLEVELAND.

understood to have been a legal recovery, and to have meant the establishment of the right of one person to land adversely claimed and occupied by another, and the reduction of the same to his possession through the agency of legal proceedings, or the establishment by the same means of the right merely, when the premises were unoccupied but adversely claimed. Hence it is, since it was determined that the limitation operated upon the remedy of both parties, as well to cut off that of the grantee in the tax-deed as that of the original owner, that the question of possession, in cases where the premises were actually occupied by either under a claim of title, becomes material. For without knowing which had the possession it is impossible for the court to determine in whose favor the limitation is to be applied. The party in possession needed no recovery and was under no necessity of resorting to legal proceedings. It devolved on the party out, whichever it might be, to bring his action within the time prescribed by the statute.

But when the premises were unoccupied, the intention of the legislature seems to have been to make the recording of the tax deed such a claim of title on the part of the holder, as enabled the original owner, if he desired to test its validity, to maintain his action against him. It must have been known that many cases of that kind would arise, and assuming, as we must, that the legislature intended what their language was made plainly to express, viz., that every suit must be brought within three years from the time the deed was recorded, we can see no other way in which such intention can be carried out and the statute made effective. The recording of the deed was regarded as a *bona fide* assertion of title on the part of the holder, and a declaration that he was prepared to defend it. All legal presumptions were in favor of the regularity and validity of the deed, and the genuineness of the grantee's title. The statute (sec. 109) declared that it should vest in him an absolute estate in fee simple, subject only to such unpaid taxes as were a lien upon it, and that it should be *prima facie* evidence of the regularity of all proceedings from the valuation of the land by the assessor, inclusive, up to the execution of the deed,

and might be recorded with like effect as other conveyances of land. The recording, therefore, of a deed good upon its face, was not only a challenge of the rights of the original owner and all opposing claimants, but it was notice to them of its existence and presumed validity. Henceforth the grantee was presumed to be the real owner, and upon this presumption he might safely act, until it was attacked, either by an actual hostile occupancy or the commencement of an action, the burden of which was upon those who claimed a superior title. The original owner and those claiming adversely having been authorized to commence the action and show the defect in the proceedings upon which the deed was founded, if any existed, their failure to do so within the time allotted for that purpose, must be deemed an admission of the correctness of such proceedings, and they cannot afterwards, without the consent of the grantee, be permitted to impeach them. If he insists, it is his legal right to rely upon the protection of the statute. Having been allowed ample time for showing that the sale was not according to law, and having omitted to avail themselves of it, the opposing claimants cannot complain at a result which is solely attributable to their own neglect and inaction. For admitting their own title to be valid, and that under the tax deed defective, they have nevertheless, by their laches, voluntarily postponed it to the latter.

In saying this much in reference to former decisions, we do not, of course, wish to be understood as saying that there may not be circumstances under which the purchaser at the tax-sale may be precluded from taking advantage of the protection afforded by the statute. If by professions of submission to the title of his adversary, he should induce him to delay the prosecution of it, or if by fraud or stratagem he should lull him into inactivity, or throw him off his guard, it is very possible that he might, by such conduct, forfeit the privileges extended by it. Effects thus produced might not be presumed to have been intended by the legislature. It might be said that it is only when his conduct has been fair and open, and untainted by fraud or artifice, that he would

come within the spirit of the enactment. *Miller vs. Keene*, 5 Watts, 348 ; *Comegys vs. Carley*, 3 id., 280.

They had in Pennsylvania, at an early day, a statute very similar to our own, and some interesting discussions upon it will be found in the following reported cases ; *Parrish vs. Stevens*, 3 S. & R., 298 ; *Ash vs. Ashton*, 3 W. & S., 515 ; *Cranmer vs. Hall*, 4 id., 38 ; and *Waln vs. Shearman*, 8 S. & R., 357. The act provided that no action for the recovery of lands should lie unless the same was brought within five years after the sale thereof for taxes. In the first named case it was held that no action could be maintained after the lapse of five years, and that it made no difference whether the purchaser did or did not enter into possession within that time. The court considered that where he did not enter he would be deemed in law to be in possession, so that the original owner could prosecute. But this case was overruled in *Waln vs. Shearman*. It was there held that an action could not be maintained against the purchaser, unless he was in actual possession, and because it could not, the court decided that the statute commenced running only from the time of entry. It was put upon the ground that the legislature could not have intended any such monstrous oppression and injustice as to say to the owner that he must commence his suit within a fixed period, when during that period he was deprived of the opportunity of so doing, or it was left with his adversary to decide whether he should or not. But with us this objection does not exist. It is obviated by the statutory provision to which reference has been made. See also *Robb vs. Bowen*, 9 Barr, 71.

In the present case, after the tax-deed was offered and received in evidence, the respondent was called to the stand as a witness in his own behalf, and testified to various matters, tending to show that he was in possession of the premises in suit during a part of the three years which elapsed next after the recording of the deed. After he had retired and rested his case, the appellant was called and sworn. Pending his examination, his counsel offered in writing to prove by him that the respondent was not in possession of the lot in suit, or any part of it, on the 21st of February,

1855, at which time the tax deed was executed and recorded; that he was not in possession, either personally or by tenant, at any time from 1851 down to the month of April, 1859; and especially that such was not the case during the three years next after the recording of the deed; but that, on the other hand, he, the appellant, had been in the exclusive possession during the whole of the period aforesaid. To the introduction of this testimony the respondent, by his counsel, objected, and the objection being sustained, the appellant excepted. It is manifest, from what has already been said, that this ruling was erroneous. The evidence of possession should have been admitted. The appellant had the right to show, if he could, that he was in possession during the three years prescribed by the statute, and thus cut off the title claimed under the tax deed.

Two other exceptions were taken, which we were strongly urged to consider. One was to the admission of the tax deed, for the reason that the statutory pre-requisites authorizing its issue were not proven. Under it the counsel for the appellant insisted that the purchaser was bound, in the first instance, to prove that there was a tax, in order that it might appear that the land "was sold for taxes." The other was to the exclusion by the court of the appellant's testimony, by which he offered to show that several sections of taxable land, within the taxing district in which the lot in suit was situated, were deliberately and intentionally omitted by the common council and city authorities, in the levy, assessment and collection of taxes for the year in which the taxes were levied, for the non-payment of which the lot was sold. We are of opinion that the statute put these matters at rest, and that the appellant cannot go into them. It made the deed, in the first instance, *prima facie* evidence of the regularity of all proceedings, from the valuation by the assessor, inclusive, up to the execution of the deed. The levy of the taxes followed the valuation. The deed was therefore presumptive evidence that the taxes were properly levied. It was like evidence that all taxable property within the district was duly assessed. Such having been its effect during the time when the parties might rightfully litigate these

June Term,
1860.

KNOX
v.
CLEVELAND.

questions, it would be very singular if that effect should cease, when, by the lapse of time, the statute declares that they shall no longer dispute them, and when by delay they have permitted what was before a mere presumption to ripen into an absolute legal conclusion. Admitting that the payment of the taxes, and the deed itself, might, at the proper time, have been avoided on account of a defective levy, and because taxable property had been purposely omitted, it is now too late to inquire into them. The statute has closed the door to their investigation. The general authority of the taxing officers and the liability of the land to taxation being conceded, all other questions are at an end. If either of them were wanting, another question would be presented. It might then be urged that there was a defect of jurisdiction; that the sale was altogether unauthorized and void, and passed no title or color of title, and furnished nothing upon which the statutory bar could operate. See *Miller vs. Keene, supra*; *Coney vs. Owen*, 6 Watts, 435; *McKee vs. Lamberton*, 2 W. & S., 114; and *Cranmer vs. Hall*, 4 id., 36. Aside from these, all other matters must be considered as irregularities merely, of which the opportunity for investigation has been lost. We can perceive no reasonable ground for distinguishing between them, or for saying that the purchaser must prove a regular levy of the taxes any more than that he must prove that any other step in the proceeding was regularly taken. The statute put them all to rest or else none of them; and if none, then it was useless. We understand that its object was to protect those who, without it, had no protection, and are unable to see how that object can be effectuated without excluding from the consideration of courts and juries all questions except those which concern the power and jurisdiction of the taxing officers, or the fraud and misconduct of the parties.

The judgment of the circuit court is reversed, and a new trial awarded.