RAKOWSKI, Appellant, vs. ZIMMERMAN, Respondent.

*October 9—October 27, 1914.*

*New trial: When may be granted: Discretion: Appeal: Affirmative relief to respondent.*

1. The circuit court may in its discretion, in a proper case, grant a new trial even though there be sufficient evidence to support the verdict; and its order in that regard will not be disturbed except for an abuse of discretion.

[2. Whether the supreme court would, in a proper case and under existing statutes, grant affirmative relief to a party who has not appealed, by reversing a judgment or order and directing a judgment in his favor, not determined.]

APPEAL from an order of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed.*

This action was brought to recover damages for the alleged negligence of the defendant. Among other defenses the defendant alleged, as a separate defense, compromise, settlement, and release in full for and on account of the cause of action alleged.

The jury returned the following verdict:

"(1) Was the place where plaintiff worked at the time of the injury sufficiently safe to make it free from danger to the employees performing such work as plaintiff did, so far, as the nature of their employment reasonably permitted? *A.* No.

"(2) If you answer the first question 'No,' was the failure of the defendant to furnish to the plaintiff, at and just before the time of the injury, a place to do said work sufficiently safe to make it free from danger to the employees performing such work, so far as the nature of their employment reasonably permitted, the proximate cause of the injury? *A.* Yes.

"(3) Did the defendant direct the plaintiff to set the temporary braces in the ditch not more than about three feet apart? *A.* No.

"(4) Did the defendant direct the plaintiff to set the temporary braces in the ditch six feet apart? *A.* Yes.

"(5) Did the plaintiff, when he placed the temporary braces six feet apart at the place of the accident, fail to use ordinary care, and if you so find, did the want of such care proximately contribute to the injury? *A.* No.

"(6) Did the plaintiff sign the release defendant's Exhibit 1? *A.* Yes.

"(7) Did the plaintiff understand the nature and effect of the release? *A.* No.

"(8) If you answer the seventh question 'No,' was the

plaintiff induced by false representation of the agent Dorow to believe the writing he signed to be a receipt for wages merely?  *A.* Yes.

"(9) If you answer the eighth question 'Yes,' did the plaintiff, in relying upon said representations and in signing said paper, use due care?  *A.* Yes.

"(10) Did the plaintiff accept the $25 last paid him by the defendant with the understanding that no further claim should be made by him upon defendant for his injuries? *A.* No.

"(11) What sum of money will reasonably compensate plaintiff for his injuries?  *A.* $2,500."

Plaintiff moved for judgment on the verdict and the defendant made the usual motions to change answers of the jury and for judgment and for new trial on various grounds. The court denied plaintiff's motion and made an order setting aside the verdict and granting a new trial, and ordered the costs and disbursements of the former trial paid by the defendant upon the following grounds:

"The evidence offered by the plaintiff on the issue of the release impresses me as very incredible.  I am satisfied from all the evidence that the plaintiff well understood the release and that no fraud was perpetrated upon him for the purpose of inducing him to sign the release.  The jury, however, seemed to have thought otherwise.  Under these circumstances I think it proper to grant a new trial upon payment by the defendant of plaintiff's taxable costs and disbursements of the trial."

The plaintiff appealed from the order denying his motion for judgment and granting a new trial.

For the appellant there was a brief by *Lehr, Kiefer & Reitman,* attorneys, and *J. Elmer Lehr, Julius E. Kiefer,* and *Max Schoetz,* of counsel, and oral argument by *J. Elmer Lehr.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *I. A. Fish,* of counsel, and oral argument by *Mr. Fish.*

KERWIN, J.   Counsel for appellant argues that there was sufficient evidence to support the verdict, hence the court below was in error in granting a new trial.   The trial court is not precluded from granting a new trial in every case where there is evidence sufficient to support the verdict. Within its discretion it has power, in a proper case, to grant a new trial even though there be sufficient evidence to support the verdict, and its order in that regard will not be disturbed unless there is an abuse of discretion.   We find no abuse of discretion in the present case.

On the part of the respondent it is argued that there was not sufficient evidence to support the verdict, and that we ought on the respondent's exceptions, though he took no appeal, to grant him affirmative relief and dismiss the plaintiff's complaint.   Whether this court would, in a proper case and under existing statutes, grant such relief to a party who had not appealed we need not and do not now decide, because we do not regard the present case one in which the power should be exercised.

*By the Court.*—The order appealed from is affirmed.

MARSHALL, J.   Respondent's counsel contend, with good warrant, that the trial court should have gone much further than to set aside the verdict and grant a new trial; that the evidence clearly showed appellant's claim was without merit, and, therefore, instead of burdening respondent and the public with another trial that the action should have been dismissed with costs.   Proper motions to that end were made below, and exceptions taken to the denial thereof.   Counsel now urge upon this court an extension of the rule that a respondent may have the benefit of exceptions taken in his behalf in the court below in support of the judgment, rendering innocuous exceptions on behalf of appellant which might otherwise be efficient.   That is a novel proposition; but has such merit that I think it should not be passed without serious consideration and some expression of opinion.

The doctrine which we are invoked to extend to the new situation, and the companion doctrine that one against whom an appeal is taken, but who does not cross appeal, cannot have the benefit of his exceptions to secure a modification or reversal of the judgment in his favor, are mere practice matters, wholly of judicial creation. If mere technical rules of procedure could be so sanctified by time as to preclude their being changed by the power which originated them and made to give way to the pervading conception of the present—that such interferences with the competency and willingness and duty of courts to pronounce, as speedily and with as little costs to parties and the public as possible, upon the justice of a controversy within their grasp, and in its entirety, so far as due conservation of the rights of all will permit should be, as far as practicable, relegated to the obsolete and unsuitable to modern conditions,—then the rules in question would be impregnable to mere judicial effort. Their ancient origin is indicated in the following: *Knox v. Cleveland,* 13 Wis. 245; *Lee v. Dunlop,* 15 Wis. 387; *Maxwell v. Hartmann,* 50 Wis. 660, 664, 8 N. W. 103; *Hoey v. Pierron,* 67 Wis. 262, 30 N. W. 692; *Hackett v. Western Union Tel. Co.* 80 Wis. 187, 49 N. W. 822; *Mendota Club v. Anderson,* 101 Wis. 479, 78 N. W. 185; and *Hopkins v. Langton,* 30 Wis. 379.

One is liable to be misled by the citation in *Hackett v. Western Union Tel. Co., Maxwell v. Hartmann,* and *Mendota Club v. Anderson, supra,* of sec. 3070 of the Statutes, suggesting, inferably, that authority to review respondent's exceptions in support of the judgment is referable to the written law. There is nothing of the sort in the letter of that section, nor is there in its spirit, so far as I can perceive. The power of the court is grounded in the fundamental law. Except as the legislature has provided new methods of its acquiring possession of a controversy for the purpose of review, and provided reasonably practicable regulations, the court is largely master of its own modes of

procedure and may change the same, reasonably, from time to time as changed conditions seem to demand to enable it to fulfil, as fully as possible, its constitutional functions.

The statute in mere practice matters, in general, is not a limitation of power, but rather an extension or regulation thereof. The whole purpose of the Code was to broaden and simplify, eliminating the multitude of common-law technicalities which had grown to be interferences with judicial competency to proceed directly to the meat of a litigated matter and solve it, and do it with finality on appeal in case of the justice of the case being clear. In that broad conception it was provided that "Upon an appeal . . . the supreme court may reverse, affirm or modify the judgment or order, and as to any or all of the parties; and may, if necessary or proper, order a new trial; . . . In all cases the supreme court shall remit its judgment or decision to the court from which the appeal or writ of error was taken, to be enforced accordingly; and if from a judgment, final judgment shall thereupon be entered in the court below, in accordance therewith, except where otherwise ordered." Sec. 3071, Stats.

What could be more comprehensive than the quoted language, and yet, with all due regard for the eminent men who were members of this court during the first half century of its history and served the commonwealth with great distinction, it seems that there was much failure to vitalize the lofty conception of the Code makers, and controlling inclination to retain much of the spirit of the old system, and many of its technicalities which the new one was designed to displace.

Perhaps the long hesitation to recognize the true spirit of the Code and the slow process, for a time, but somewhat rapid pace later, toward the ideal of full vitality thereto, has not been without its advantages. The making of the Code was a revolution. It was very difficult and, in many cases, seemingly, impossible for the instrumentalities called

to administer the new system to overcome the inertia which characterized ancient learning and customs. So the fruit from the seed, planted securely three. quarters of a century ago, has been long in coming to maturity.

The foregoing observations seem appropriate to the situation with which we are now confronted. There can be no manner of doubt but that there is judicial power to deal with such situations by sending the cause back with directions for a dismissal, as respondent suggests. While the doctrine sought to be extended can hardly be found. in the statute early referred to, there is no fundamental or statutory impediment in its existence, moreover, it and a broadening thereof so a respondent may not only have the benefit of his exceptions in support of the judgment complained of; but as a basis for a more favorable judgment being rendered, can be easily read out of sec. 3071, Stats., and the whole spirit of the Code.

If it were not for later decisions one would, by deduction, conclude that the rule now sought to be extended, first declared in *Hopkins v. Langton,* 30 Wis. 379, without any thought of its being dependable upon statute, by necessary implication displaced the rule, early declared, that respondent cannot have the benefit of his exceptions on his adversary's appeal. That such was thought to be the inferable result is indicated in *Witt v. Trustees, etc.* 55 Wis. 376, 13 N. W. 261. There the claim was made that the ancient rule was abrogated by *Maxwell v. Hartmann,* 50 Wis. 660, 8 N. W. 103, and the court remarked: "We are not disposed to give any further effect to the exceptions of the respondent, upon an appeal to this court, than was suggested in the case of *Maxwell v. Hartmann,* 50 Wis. 660, 8 N. W. 103." Thus recognizing that whether to do so or not, is purely a matter of discretion and that so far as *Maxwell v. Hartmann,* in its letter, is to the contrary, it was inconsistent with *Knox v. Cleveland,* 13 Wis. 245, and similar

cases. All down through we see the evidences of progression, step by step, up to the point of taking the one now requested. In the *Maxwell Case,* which was tried by the court, the rule was restricted thereto. In the *Witt Case* it was restricted, inferentially to such particular situations. That was followed by *Jones v. Jones,* 64 Wis. 301, 25 N. W. 218, where it was observed that whether respondent's exceptions were available to him for a reversal in his favor on his adversary's appeal, was an open question until *Witt v. Trustees, etc., supra,* where the claim in that regard under secs. 2870, 2875, and 3070 was fully considered and denied. It should be noted that such case was tried by the court; that the report of it does not disclose the sections of the statute suggested in *Witt v. Trustees, etc.,* to have been mentioned or considered vital, and that the decision was a mere declaration of judicial policy.

In *Hacker v. Horlemus,* 69 Wis. 280, 286, 34 N. W. 125, the court again and most emphatically, recognized the doctrine of *Knox v. Cleveland* as applying to actions, generally, and restricted the doctrine of *Maxwell v. Hartmann* to cases tried by the court, seemingly supposing that such doctrine rested on sec. 3070 of the Statutes, and overlooking the broad declaration of policy in sec. 3071 of the Statutes. That restriction was mentioned in *Hite v. Keene,* 149 Wis. 207, 134 N. W. 383, 135 N. W. 354, but probability of exceptions suggested. My remembrance is that such restriction has not been observed in recent years and that the rule, by merely ignoring the distinction, has come to be considered as applicable to actions regardless of how tried. I know it was so thought by some of us when the opinion on rehearing in *Hite v. Keene* was filed, though it was not necessary to deal with the matter.

As already indicated, the rule under discussion was first declared and applied in *Hopkins v. Langton.* It was said to be a general principle which obtained in the absence of

any inhibition by statute. Not until *Maxwell v. Hartmann* was the idea suggested that the court's power in respect to the matter was derived from sec. 3070, Stats. That led, naturally, to the later idea that it was restricted to cases tried by the court, as such statute only deals with such cases. That was kept somewhat prominent for a few years and then dropped out of sight and the early general doctrine as in *Hopkins v. Langton* resumed full sway.

The chronological history of the subject is interesting. First we find the rule stated as general in the absence of some inhibition in the written law. Next the rule stated as referable to sec. 3070, Stats., the first declaration not being referred to. That was followed by *Witt v. Trustees, etc.* Next came *Maier v. Davis,* 57 Wis. 212, 15 N. W. 187, a jury case, where the matter was dealt with as at first. Next came *Fox Lake v. Fox Lake,* 62 Wis. 486, 22 N. W. 584, a jury case, where the generality of the rule was again indicated. That was followed by *Jones v. Jones,* 64 Wis. 301, 25 N. W. 218, where the restrictive feature was not recognized. Next in order is *Hoey v. Pierron,* 67 Wis. 262, 30 N. W. 692, a jury case, the restriction being ignored. Next is *Hacker v. Horlemus,* 69 Wis. 280, 34 N. W. 125, a jury case, where the rule was most emphatically restricted to cases tried by the court,—overlooking the origin of it and the cases where it had been otherwise applied,—citing *Stevens v. Millard,* 36 Wis. 77, which does not deal with the subject at all and other cases heretofore referred to, and showing that the conclusion was referable to the notion that judicial power was in sec. 3070, Stats. Then there was a cessation of activity until *Hackett v. Western Union Tel. Co.* 80 Wis. 187, 49 N. W. 822, a jury case, where the rule was applied as at first in *Hopkins v. Langton,* but without citing it, and, instead, citing *Maxwell v. Hartmann* and *Hoey v. Pierron,* and omitting *Hackett v. Horlemus,* which would have condemned such application. That was fol-

lowed by *Mendota Club v. Anderson,* 101 Wis. 479, 78 N. W. 185, where both classes of cases were cited as in harmony, notwithstanding the conflict, and stating the rule as of general application, clearly, by implication, treating the restrictive feature as eliminated.

I think the status indicated by the last case has not been changed and that there have been many instances of the application of the rule, regardless of whether the case below was tried with or without a jury, the matter being regarded as too well established to call for any significant reference thereto in opinions. So far as I can discover, the restriction, as stated in *Hacker v. Horlemus,* has not been reaffirmed or recognized for some twenty-five years.

So I feel safe in asserting that the doctrine of *Hopkins v. Langton* is now in full vitality. That is in harmony with the ruling idea which has obtained here with progressing significance, and been the guide to judicial footsteps in working a somewhat radical change in judicial conception of power and judicious exercise of it in disposing of a case once brought within our jurisdiction by appeal. As said in *Crawley v. Am. Soc. of Equity,* 153 Wis. 13, 139 N. W. 734, "the powers [better have said practice] of this court are [is] very broad and intended to cover every contingency that may arise upon any appeal." Many illustrations might be given of the power vested here to compel litigants to do justice, once the controversy is brought within its control by appeal. *Will of Rice,* 150 Wis. 401, 136 N. W. 956, 137 N. W. 778, is a good one. The power has little limitation short of the exigencies of the case, as regards the parties and the public, and the practice is now quite in harmony therewith.

So I am unable to see why the deck, so to speak, is not fully cleared for an extension of the rule as suggested, giving the respondent, on his adversary's appeal, the benefit of his exceptions for affirmative relief, when that shall appear

to be the clear justice of the case. That is a logical step to take, in a conservative progressive course, to effectuate the dominant purpose of the Code and the supreme judicial function. Nothing stands in the way but mere practice limitations of the rule which the court has full competency to abolish, as it has many others, in its efforts to simplify, expedite, and economize, in the administration of justice and render more certain the vindication of rights.

While the motion of respondent's counsel for a new practice rule, in harmony with the general trend of our judicial administration and growth towards effectuating the conception of the written law, is denied, there is honor in having it brought so strikingly, as in this case, to the attention of the court. That is especially so, since, as I understand it, the denial does not rest on supposed want of judicial power or even inexpediency of the change, but the thought by my brethren that, if the advancement were advisable, it should only extend to cases where the real justice of the matter unquestionably warrants it, and that such degree of certainty does not exist in this case, in view of the decision of the trial court denying respondent a judgment of dismissal and ordering the cause submitted to another jury. While I am not so certain that the court thus gives too much dignity to the decision of the trial judge, notwithstanding the high regard which should be accorded thereto, that, standing alone, I feel compelled to dissent, I am strongly inclined that way; but rest the case by vindicating, so far as I may, the competency of the court, in a proper case, to reverse in respondent's favor on his adversary's appeal and order a judgment ending the litigation. In that, I apprehend, the court does not desire to express anything to the contrary.

WINSLOW, C. J. (*concurring*). In this case the court held, without dissent as I understand it, that the case was a proper case for a new trial and hence that the order of the

trial court was right and the question whether relief might be granted to respondent upon his exceptions when he had taken no appeal was not before us for decision. When that question is fairly presented for decision this court will doubtless meet it fairly and solve it courageously after full consideration and discussion. I know of no reason why any opinion should be expressed upon it until that time, nor do I know of anything in the recent history of this court which should give any one any cause to fear that, when that time comes, any merely technical rule of procedure will be elevated into a vested right or given undue sanctity.