Muscoda State Bank, Respondent, vs. Kolar, Appellant.

*April 7—May 12, 1925.*

*Bills and notes: Execution: Knowledge of maker as to nature of instrument signed: Want of ordinary care: Holder in due course: Effect of subsequent breach of executory agreement: Appeal: Exception available to support judgment.*

1. The question whether the maker of a note ought to have discovered by the exercise of ordinary care the fact that he signed the note and not a contract which he thought he was signing, is for the jury under the evidence. p. 42.
2. A contract to sell registered sows and to buy from the purchaser a certain number of their progeny at forty per cent. above the Chicago market, is not invalid as against public policy. p. 43.
3. Where an executory contract in connection with which a note is executed is fair on its face, a failure of consideration arising from a subsequent breach of the contract, after a *bona fide* transfer of the note, does not defeat recovery by the holder, notwithstanding he knew of the contract and the consideration for which the note was given. p. 44.
4. On appeal an exception taken by respondent to an erroneous ruling in favor of appellant is available in support of a judgment, although there has been no appeal or notice to review the ruling. p. 45.
5. The fact that a note sued on by the holder was procured from the maker without the latter's knowledge of the nature of the instrument he executed is not a defense thereto under sec. 116.60, Stats., without further proof that such knowledge could not have been obtained by the maker by the exercise of ordinary care. p. 47.

Appeal from a judgment of the circuit court for Dane county: E. Ray Stevens, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *W. H. Stevenson* of Richland Center, attorney; and *Grady, Farnsworth & Walker* of Portage, of counsel, and oral argument by *Daniel H. Grady.*

For the respondent there was a brief by *R. M. Orchard* of Lancaster and *Kopp & Brunckhorst* of Platteville, and oral argument by *Arthur W. Kopp.*

JONES, J. This is an action by a bank claiming to be the holder in due course of a promissory note bearing the defendant's signature. The defendant claims that he never signed a note and that there was no negligence upon his part in not discovering the fraud by which his signature was obtained to the note in question.

The defendant in March, 1920, contracted to purchase for $450 three sows from the Pedigree Swine Association, Inc., which were warranted "bred and safe in pig to first class boars." The portion of the agreement most material was as follows:

"The party of the first part further agrees:

"First. To furnish second party with registration and transfer papers for each animal purchased.

"Second. To purchase from the party of the second part, within eighteen (18) months from this date, approved female progeny of the above sow or sows, in such numbers that the aggregate value of which shall at least equal the amount of the original purchase price of said sow or sows. Party of the first part to have the first selection of all pigs farrowed, and in the event second party disposes of any of said pigs prior to selection by first party, without first party's consent, then said first party shall be released from the obligation to purchase as specified in this paragraph.

"It is further agreed under the terms of this paragraph than an offer to buy by first party of second party of hogs in value of the whole or part of the said amount will relieve the said party of the first part in such amount of the obligation arising under the terms of this paragraph, in the event second party refuses to sell.

"Third. To pay forty per cent. more than the price per pound above the top price of the prevailing Chicago market, on date of purchase, on all approved progeny specified in paragraph two, purchased under this agreement."

The defendant agreed to care for the hogs in a manner most consistent with their best development as breeders; to immunize all progeny and to furnish a certificate thereof on request; to register all progeny as prescribed in the agreement.

The agent of the Pedigree Swine Association was driven out to the defendant's farm and made the arrangements there.   He testified that the defendant signed the note in question and to the best of his knowledge also signed the contract.   The defendant testified that he signed only the contract; that his signature on the note must have been obtained by fraudulently placing the note under the original of the contract or by substituting the note for the contract when he was about to sign the paper.   There was some cor- roboration of parts of the defendant's testimony by his brother-in-law.

The plaintiff bank purchased the note the following day after the three sows had been delivered and with no knowl- edge as to the actual circumstances of this transaction other than that the cashier was acquainted with the type of con- tracts made by the Pedigree Swine Association, as he had purchased a sow under such a contract.   Upon the trial the jury found that the defendant did not know that he was signing a promissory note, but that by the exercise of ordinary care under the circumstances he ought to have dis- covered the fact; that the hogs would have been worth the sale price if they had been safe with pig, and that they were actually worth as delivered $208.

It is the first assignment of error that the court erred in denying the defendant's motion to change the answer of the jury on the question of the defendant's negligence.   It was conceded that the note bore his signature.   There was no direct testimony of any such substitution of the note for the contract as is claimed.   It is urged that some such fraudulent act must have taken place because the defendant testified positively that he only signed one document and from the fact that the jury found that he did not know that he had signed a note.   The contract was printed on thin yellow paper in which blanks were filled with a pencil.   A carbon was used and a copy of the contract was thus made and it was left with the defendant.   The signature of the

defendant does not appear on the copy left with him although all the pencil marks are much faded. The note was on thicker, white paper also on a printed form. We shall not undertake to review all the testimony on this subject. There is a clear conflict on the question whether the defendant signed two documents and whether at the time of the transaction the terms of the note were discussed. Moreover, it appeared that after demand for payment of the note by the bank the defendant wrote to the Pedigree Swine Association referring to the note, making objection to the claim, but making no claim that he had not signed a note. The conflicting testimony as to the manner in which the transaction took place, the difference in size and appearance between the note and the contract, and the ease or difficulty with which the substitution claimed could have been made, were all subjects for the consideration of the jury. We do not feel justified in holding that their finding as to want of care by the defendant, approved by the trial court, should be set aside.

It is next urged that the plaintiff is not a holder in due course. There is no claim that the plaintiff or the cashier had any notice of the facts which occurred when the note was given or any notice that any claim was made by the defendant that there had been practiced any fraud or trick in respect to the manner in which the note was executed. The bank did not then have knowledge and no one else knew that the sows were not with pig. The plaintiff paid as consideration the full face of the note. Defendant's counsel base their claim of notice on the fact that the cashier had seen the form of the contract which was to be used in making sales to the farmers. It is claimed that on its face this contract gave notice that it was void on grounds of public policy; that it could not be carried out without violating the law; that it necessarily contemplated the defrauding of other persons, and involved the forming of an endless chain with no other purpose than that of victimizing the public. Counsel rely

on a class of cases known as the Bohemian Oats Cases, of which *McNamara v. Gargett,* 68 Mich. 454, 36 N. W. 218, is typical. In this case the purchaser of the note knew before the transfer that it had been represented to the maker that the association, which had given a bond to the maker, was an incorporated company, when no such company existed, and that this representation was relied on. The oats sold were worth little more than ordinary oats. The maker received as part of the transaction an agreement in writing by which it was provided that the payee of the note should sell within one year fifty bushels of Bohemian oats for the defendant at $10 per bushel, for which he was to receive a commission. The court said: .

"The carrying out of this obligation on the part of Griffith meant the finding of another victim, within one year, who would take fifty bushels of Bohemian oats at $10 per bushel, upon the giving to him of a contract to sell for him, the next year after, one hundred bushels at $10 per bushel, and so on *ad infinitum,* and increasing the number of bushels to be sold each year; and from this contract alone, on the tenth year, the enormous amount of the sale must be 25,600 bushels at $10 per bushel, if this contract is to be carried out."

On this state of facts it was held that the contract was void as contrary to public policy, and that as the plaintiff had notice of the facts he was not a holder in due course.

The distinction between this class of cases and the case before us is very plain. Here there was no contract on the part of any one to sell to third persons any property whatsoever. According to the finding of the jury the hogs bought by the defendant were worth the price agreed to be paid if they had been with pig. The hogs were of the character represented as to pedigree, and all the terms of the contract were complied with except the guaranty that they were with pig. It can hardly be said as a matter of law that there was anything repugnant to good morals or public policy in the agreement of the Pedigree Swine Association to buy a lim-

ited number of pure-bred registered swine at forty per cent. more than the price for ordinary hogs in the Chicago market. We agree with counsel for the appellant that if the plaintiff had notice that the contract made as consideration for the note showed on its face that it contemplated the practice of fraud upon innocent third persons, the plaintiff was not a holder in due course. But we cannot agree that the agreement in question comes within the same class as the contracts referred to in the case just mentioned or in such cases as *Twentieth Century Co. v. Quilling,* 130 Wis. 318, 110 N. W. 174, and other cases cited by the appellant's counsel. The question whether the plaintiff was a holder in due course will be further discussed later in this opinion.

The only breach of the contract was that the sows did not farrow, although in subsequent years they did produce progeny. This was a breach subsequent to the execution and transfer of the note. It is argued by the appellant's counsel that since the plaintiff had notice of the terms of the contract the court erred in directing judgment for the full amount of the note and allowing no offset to the defendant. Whether or not there would be a breach of the contract could not, under the evidence, be ascertained when the note was bought. It is true as claimed that as between the parties a note and a contemporaneous contract may often be construed as one agreement, and the same is true as to purchasers of the note knowing of the agreement. But it does not follow that, when the agreement is fair on its face, purchasers of the note for value lose their status as holders in due course because of a subsequent breach. In the present case there was nothing in the contract restricting the negotiability of the note or showing that any breach had occurred. Vast sums of money are raised every day in this country by the sale of notes given on executory contracts. It would be a dangerous rule if makers of commercial paper could defeat their obligations because purchasers in good faith had knowledge of such executory contracts, although

they might have no knowledge that any breach would occur. The following are some of the cases illustrating the rule that failure of consideration after a *bona fide* transfer does not defeat a recovery although the holder had knowledge of the contract and the consideration for which the note was given: *Hakes v. Thayer,* 165 Mich. 476, 131 N. W. 174; *Rublee v. Davis,* 33 Neb. 779, 51 N. W. 135; *Valley Savings Bank v. Mercer,* 97 Md. 458, 55 Atl. 435; *McKnight v. Parsons,* 136 Iowa, 390, 113 N. W. 858.

The defendant filed an answer containing a counterclaim in the alternative, that, if the plaintiff was entitled to recover, the defendant's damage be offset against the amount due. The plaintiff demurred to this counterclaim and the demurrer was overruled. It is now argued that this ruling was an adjudication that the right to an offset existed, that the facts pleaded were established in the trial, and that the order became *res adjudicata*. It is claimed that since the plaintiff did not appeal from the order and has served no notice for review the order is conclusive. It is the rule, well settled in this state, that on appeal an exception taken by respondent to an erroneous ruling in favor of the appellant is available in support of the judgment. *Mendota Club v. Anderson,* 101 Wis. 479, 78 N. W. 185; sec. 3070, Stats. An interesting review of the decisions will be found in the separate opinion of Mr. Justice MARSHALL in *Rakowski v. Zimmerman,* 158 Wis. 539, 542, 149 N. W. 214.

It is next argued that the court erred in its instructions to the jury as to the burden of proof. Question No. 1 was as follows: "Did *Mr. Kolar,* at the time he signed the note here in question, know that the instrument signed by him was a promissory note?" To which the jury answered "No." The following was question No. 2: "If you answer question No. 1 'No,' ought *Mr. Kolar,* by the exercise of such care as the great mass of mankind of like age, intelligence, and experience ordinarily exercise when acting under the same or similar circumstances, to have discovered that

the instrument signed by him was a promissory note before he signed the same?" As to this question the court instructed the jury that:

"If·you answer question No. 1 'No,' and ten or more members of the jury are satisfied by the greater weight of the evidence that by the exercise of the degree of care which is stated in this question *Mr. Kolar* ought not to have discovered that he was signing a promissory note, your answer to the second question would be 'No.' On the other hand, if ten or more members of the jury are satisfied by the greater weight of the evidence that by the exercise of the degree of care stated in this question *Mr. Kolar* ought to have discovered that he was signing a promissory note, then your answer to this question will be 'Yes.' "

The court gave full instructions, as requested by the defendant's counsel, to the effect that the defendant was not bound to assume that he was going to be defrauded by the substitution of another instrument in the place of the one which he had read; that he was under no obligation to read the instrument immediately before signing; that they should take into consideration whether any note had been shown or read to him; that the defendant was not bound to proceed with suspicion that a fraud was to be practiced upon him; and that he was not chargeable with such knowledge or information as would have been acquired by a more experienced or cautious person. The record does not disclose that any request was made as to the burden of proof. In maintaining that the burden of proof on this question was on the plaintiff and that the jury were not properly instructed, counsel for the defendant rely on the general rule that the burden of proof rests on those alleging fraud and negligence, and they cite authorities which for the most part relate to those subjects in actions of tort and on ordinary contracts. In this case we are dealing with the subject of commercial paper and the question whether there is a defense to the claim that the plaintiff is a holder in due course. Counsel for the defendant rely on the following section of the statute, 116.60,

which provides that "The title of a person who negotiates an instrument . . . is absolutely void when such instrument or signature was so procured from a person who did not know the nature of the instrument and could not have obtained such knowledge by the use of ordinary care," and argue that since the jury found that the defendant did not know the nature of the instrument he had signed the jury should have been told that the burden was on the plaintiff to prove that the defendant could not have obtained such knowledge by the use of ordinary care. It is not claimed that it was incumbent on the plaintiff to prove that the defendant had knowledge of the nature of the instrument. It will be observed that the two conditions necessary to a defense in such a case are connected by the conjunctive "and." Proof of both conditions is necessary to defeat a recovery, and there is good reason for so holding. In ordinary transactions, when a payee discounts commercial paper before due to one acting in good faith the transferee has no means of knowing the mental operations of the maker or whether he used ordinary care in signing the instrument in question. Those are facts peculiarly within the knowledge of the maker. Any rule which should impose upon one who purchases a promissory note before due for a full consideration the burden of showing that the maker knew that he had signed the instrument or that he acted without negligence in so doing, would be a rule which would make the buying of commercial paper so perilous that no sensible person would engage in it. We consider that the instruction on this subject was as favorable to the defendant as he had the right to ask.

Counsel for the plaintiff argue that the defendant's counsel are estopped from claiming that the burden of proof on this question rested on the plaintiff for the reason that they insisted that the burden of proof was on the defendant and by so doing obtained the opening and closing of the arguments. In view of what has been said in this opinion it becomes unnecessary to decide that question.

The point is made in the appellant's brief that there was error in the instruction as to five-sixths of the jury, but in the oral argument it was stated by counsel that in view of recent decisions by this court the objection was not insisted on.

*By the Court.*—Judgment affirmed.