Merrill v. Packer.

## MERRILL v. PACKER.

1. **Contracts:** VALIDITY : GAMBLING : PUBLIC POLICY. Defendant gave the note in suit for six hundred dollars to a certain seed company, in consideration of the sale to him of forty bushels of "prolific oats, at fifteen dollars per bushel, as a speculation," and the obligation in writing of said company to sell, by a stated time, eighty bushels of defendant's oats at fifteen dollars per bushel to responsible parties, for which defendant agreed to take his pay in notes, allowing the company thirty-three and one-third per cent. commission on all notes taken. The contract contained this stipulation : "The transaction covered by this obligation is of a speculative character, and is not based upon the real value of the grain." *Held*—

   (1) That it was not a gambling contract, within the meaning of section 4029 of the Code, making notes given in consideration of gambling contracts void. (*Hanks v. Brown*, 79 Iowa, 560, *followed.*)

   (2) But that the contract was against public policy, because it could not be performed without deception and fraud practiced upon other parties, and, therefore, was in conflict with the morals of the times and the established interests of society. (See opinion for authorities.)

2. **Promissory Note :** ACTION BY INDORSEE : INVALIDITY : ESTOPPEL OF MAKER. Where the maker of a note states to one about to purchase it from the payee that it is all right, and that he will pay it,

and the purchaser relies upon such statement and takes an indorsement of the note, the maker is estopped from setting up as a defense that the note was void for illegality or fraud ; but, where he states that he will pay the note provided the parties to whom it was given do as they agreed, he is not so estopped.

3. ———: ———: ———: NOTICE: AGENCY. In an action on a promissory note (which was invalid as between the original parties to it) by the second indorsee against the maker, where there was evidence tending to show that the first indorsee was the agent of the second one in making the purchase of the note, the court properly instructed that plaintiff was chargeable with whatever knowledge the first indorsee had with respect to the infirmities of the note.

4. ———: ———: ———: EVIDENCE: AGENCY. In such action, it being in issue whether the first indorsee purchased the note as agent for plaintiff, it was proper to ask the first indorsee what he paid for the note, as showing the good or bad faith of the purchaser.

*Appeal from Marshall District Court.*—Hon. J. L. Stevens, Judge.

Filed, June 5, 1890.

ACTION upon a promissory note made July 25, 1887, by defendant to E. C. Johnson or bearer, for six hundred dollars, due October 1, 1888, with ten per cent. interest, payable annually, with ten per cent. on interest due, attorney's fees if action is commenced, and a clause conferring jurisdiction on any justice of the peace. It is alleged that this promissory note was indorsed by Johnson to O. L. Binford, who indorsed same to plaintiff, for value, before due. Defendant admits the execution of the note, and alleges that it was executed in connection with a certain bond; that it was obtained by false and fraudulent representations, without consideration, and to evade the usury laws of the state ; that said note and bond were made to cover a wagering and gambling contract; that said contract is in restraint of trade ; that the clause in the note giving a justice jurisdiction makes the note null and void, and non-negotiable; that plaintiff purchased, with knowledge of the facts, from O. L. Binford, who took it with

notice; and that neither was a *bona-fide* holder, but that E. C. Johnson, who made the false representations relied upon, was the owner. Plaintiff, in reply, alleges that defendant told Binford, before he purchased the note, that it was all right, and did not disclose any objections now made. Trial to a jury. Verdict for defendant. Plaintiff's motion for a new trial overruled, and judgment entered on the verdict. Plaintiff appeals. There is no question but that the note in suit was executed in consideration of the sale to defendant of forty bushels of "prolific oats, at fifteen dollars per bushel, as a speculation," by the Farmers' Field and Garden Seed Company, and the obligation in writing of said company witnessing "that on or before the first day of September, 1883, we hereby agree to sell to responsible parties eighty bushels of Mr. Allen Packer's grain at fifteen dollars per bushel, for which he agrees to take his pay in notes," the company to have thirty-three and one-third per cent. commission on all notes taken. It is agreed in writing "that the transaction covered by this obligation is of a speculative character, and is not based upon the real value of the grain."

*H. C. Henderson, J. H. Bradley* and *O. L. Binford,* for appellant.

*H. E. J. Boardman, J. M. Parker* and *J. L. Carney,* for appellee.

GIVEN, J.—I. The note and so-called bond, being executed as parts of the same transaction, are to be

1. CONTRACTS: validity: gambling: public policy.

construed together. Thus construed, they express fully the contract between the parties. It was the duty of the court to construe these writings, and determine what contract was therein expressed. If, thus construed, they disclosed a contract void for any of the reasons alleged, or valid as to any of such reasons, it was the duty of the court to so declare. The court submitted to the jury

the question as to whether this was a gambling contract. In *Hanks v. Brown*, 79 Iowa, 560, wherein the contract was identical with this, so far as this question is concerned, this court held that it was not a gambling contract, within the meaning of section 4029, Code. We have reviewed the subject in the light of the arguments and authorities cited herein on a petition for a rehearing in that case, and are still of the opinion that the conclusions announced in that case are correct. It follows that, instead of submitting the question to the jury, the court should have instructed them, as a matter of law, that this was not a gambling contract.

II. Notwithstanding this contract is valid so far as the charge that it is a gambling contract is concerned, yet, if it was void for any other of the reasons alleged, it was the duty of the court to so instruct. That this contract is void as being against public policy, we have no doubt. Any contract that binds the maker to do something opposed to the public policy of the state or nation, or that conflicts with the wants, interests or prevailing sentiment of the people, or our obligations to the world, or is repugnant to the morals of the times, is void. Any contract which has for its object the practice of deception upon the public, or upon any party in interest as to the ownership of property, the nature of a transaction, the responsibility assumed by an obligation, or which is made in order to consummate a fraud upon the people or upon third persons, is void. Greenh. Pub. Pol., 136, 152. This contract is so out of the usual course of dealings as to awaken suspicion of its fairness. Ordinarily, contracts are made upon the basis of what is believed to be actual values, but this is confessedly upon the basis of most extravagant and unreal values. To carry out this contract, eighty bushels of grain had to be sold to some person, on or before September 1, 1888, for more than thirty times their value. This could only be done by grossly deceiving the purchaser as to their value, or repeating the scheme

upon which this contract was made, or one similar.
That such a scheme could not be repeated year after
year is evident, so that in the end some person must be
deceived into paying many times the value of the oats.
If it was not intended upon the part of the company to
carry out the contract, then the fraud was consummated
the sooner. View the transaction as you may, and it
discloses a cunningly-devised plan to cheat and defraud.
"Whenever any contract conflicts with the morals of
the time, and contravenes any established interests of
society, it is void as being against public policy."
Story, Confl. Laws, sec. 546. Surely a contract that
cannot be performed without deception and fraud con-
flicts with the morals of the time, and contravenes the
established interest of society. There was no error in
instructing the jury that this contract is fraudulent and
void as between the original parties to it. In this con-
nection, see *McNamara v. Gargett*, 68 Mich. 464; 36
N. W. Rep. 218, wherein the supreme court of Michigan
held a similar contract void as being against public
policy. True, in that case the contract is said to be a
gambling contract, but it is declared to be against public
policy on other grounds.

III. There was testimony tending to show that,
before the transfer of the note to Binford, he, with a
2. PROMISSORY view to buying, asked the defendant if it
note : action was all right, to which he answered that it
by indorsee: was, and that he was willing that Binford
invalidity: should buy it, or that it was all right "if
estoppel of
maker. these men fulfill this contract." Plaintiff asked an
instruction that if defendant stated what the note was
given for, but did not disclose the defects now claimed,
and Binford bought, relying upon the statement, the
defendant would not now be permitted to plead defenses
not then disclosed. The court instructed that if defend-
ant, being informed that Binford was about to purchase
the note, told him that it was all right, and that he
would pay the same, and that Binford relied upon such
statement when he purchased the note, the defendant

is estopped from denying his liability, regardless of whether the note was part of a gambling contract, or obtained by fraud, but, if he stated that he would pay the note providing the parties to whom it was given did as they agreed, or that in substance, then he was not estopped from denying liability, or asserting the illegality of the note. The instruction given is in accord with 1 Daniel, Neg. Inst., sec. 859, cited by appellant. If the defendant stated that he would pay if the others did as they agreed, that would indicate to Binford that there was something to be done that affected the validity of the note. There was no error in the instruction given, nor in refusing that asked.

IV. There was testimony from which appellee claimed that Binford was acting as agent of plaintiff in purchasing the note from Johnson. If

3. ——:——: ——:notice: agency.

Binford was acting as such agent, then plaintiff was chargeable with whatever knowledge Binford had with respect to infirmities in the note. It is not for us to say whether such agency was proven. There was evidence tending to show it, and it was the duty of the court to submit the question to the jury.

V. On the cross-examination of Binford, defendant was permitted to ask, over plaintiff's objection, what he

4. ——:——: ——:evidence: agency.

paid for the note. It was in issue whether Binford purchased the note as agent for plaintiff. If he did, then the testimony was admissible as showing good or bad faith in the purchase. The objection was properly overruled.

This disposes of all points discussed, and brings us to the conclusion that the judgment of the district court must be                    REVERSED.