TWENTIETH CENTURY COMPANY, Respondent, vs. QUILLING, Appellant.

*December 5, 1906—January 8, 1907.*

*Patents and patent rights: Notes given for territory: Validity: Consideration: Compensation for effecting sales: Public policy: Pleadings: Amendment: Parol evidence.*

1. It is competent for the owner of a patent to sell an exclusive right to vend the device in a given county and take a note therefor.

2. Such note is valid and enforceable in full (in the absence of fraud) notwithstanding the fact that the value of the right sold is greatly overestimated.

3. A valid patent on a useful article is a sufficient consideration for a note, though the patent may never be profitable.

4. Where the owner of a patent sells an exclusive right to vend the device in a given county it is competent to agree that, in case the vendee induces others to purchase county rights of sale, the vendee shall receive as his compensation a specified part of the purchase price of such rights so purchased.

5. Plaintiff, a patentee, and defendant entered into a written contract giving defendant a county right to sell the patented article, which also contained an agreement that, if defendant should induce others to purchase county rights, he should receive a specified proportion of the sums realized from such sales. In an action on defendant's note given in part payment on such contract, defendant sought by amendment to set up a defense, substantially, that the written contract, while containing some of the conditions of the real agreements made, was largely a mere cover executed to give appearance of fairness and legality to the arrangement; that neither party contemplated that the right to sell the device in defendant's county was of any real commercial value, or that defendant would make any effort to make such sales; that the real arrangement was a joint scheme to make money by selling similar nominal territorial rights to others who should also become parties to the scheme and sell similar territorial rights to still others, and so on, the process to go on in constantly broadening circles as long as purchasers could be found, and thus necessarily leave the ultimate purchasers with nothing to show for their investment save the practically worthless right to sell the patented device in some remaining county. The trial court re-

fused to allow the amendment on the ground that it stated no defense, and also rejected offers of proof of facts tending to support the proposed amendment. *Held:*

(1) The proposed amendment stated a defense and should have been allowed.

(2) The enterprise disclosed by the proposed amendment was contrary to public policy and void.

(3) It was not sufficient that the device was of some utility and value, in the face of allegations that the right to sell it was of merely nominal commercial value on account of the great number of equally useful devices of the same nature, and was not considered in the transaction except as a means of giving an appearance of validity and honesty.

6. When an agreement is against public policy the parties cannot, by reducing some unobjectionable parts of it to writing, prevent the reception of parol evidence to show the entire agreement, although it may be inconsistent with the written paper.

APPEAL from a judgment of the circuit court for Dunn county: JAMES O'NEILL, Judge. *Reversed.* .

This is an action to recover upon a promissory note of $400 executed by the defendant to the plaintiff March 23, 1904, on which $100 is admitted to have been paid. The defendant by answer alleged in substance that the note in question was executed solely in consideration of an illegal and void contract made at the same time, by the terms of which defendant was to have the exclusive right to sell to residents of Gates county a certain patent pole and thill coupling, to be manufactured by plaintiff at prices specified, as well as the privilege of selling to other residents of Wisconsin the exclusive right to sell such couplings in other counties; the plaintiff agreeing to pay him one half the cash and notes received on such sales of territory to residents of Gates county secured by him and one fourth the cash and notes received from sales of territory to residents of said county not secured by him, also one half the cash and notes received from sales of territory to residents of the state secured by him, provided the county from which such sale was made was unsold to others, and in that case to pay him one fourth the cash and

notes received from such sale.  And it was further agreed
that each person to whom a sale was made should have the
same right as the defendant to sell exclusive territorial rights
in other counties, and purchasers from him still the same
rights, and so on without limit.  The answer further alleges
that the right to sell such couplings in Gates county was of
no value and known to be of no value by the parties, and did
not form any part of the inducement to make said contract,
but that the sole inducement was the right to sell other terri-
torial rights in other counties, with the right of resale thereof
in the purchasers.  Two counterclaims are also pleaded, which
are unnecessary to be stated.  The plaintiff replied, alleging
that the note was made in consideration of a written agree-
ment and not otherwise, and denying any representation, war-
ranty, or agreement other than those contained in such writ-
ten agreement.  A copy of the written agreement was at-
tached to the reply, and is as follows:

"Articles of agreement made and entered into this twenty-
third day of March, 1904, by and between the *Twentieth
Century Company,* a Wisconsin corporation, of Tomah, Wis-
consin, party of the first part, and *Herbert W. Quilling* of
Menomonie, county of Dunn, state of Wisconsin, party of the
second part, witnesseth: The said party of the first part, for
the considerations hereinafter mentioned, has agreed and does
hereby covenant, promise, and agree: 1st.  To grant and does
hereby grant to said party of the second part the exclusive
right and privilege of reselling its pole and thill coupling
patent No. 718,893, with double spring improvement, in the
county of Gates and state of Wisconsin, to residents only of,
and for use in, said Gates county, for a term of seventeen
years from January 20, 1903.   2d.  To sell said pole and
thill coupling to said second party in any quantity he may
wish to purchase for the purpose of reselling same, in man-
ner, as above specified, in the above granted territory, at $3
per dozen with single spring, at $3.60 per dozen with double
spring, and at $9 per dozen nickel plated, f. o. b. factory,
during the continuance of this contract.   3d.  To pay said
second party one half of the cash and one half of the notes

received from sales of territory to residents of said county secured by him. 4th. To pay said second party one fourth of the cash and one fourth of the notes received from sales of territory to residents of said county, not secured by said party. 5th. To pay said second party one half of the cash and one half of the notes received from sales of territory to residents of the state of Wisconsin, secured by said second party, provided that the county from which said sale is made is unsold to others, and in that case to pay said second party one fourth of cash and one fourth of notes received. No payments to be made on this contract until note given therefor has been fully paid; in case of any dispute arising over division of commission earned hereunder, the decision of the purchaser shall in all cases be final, conclusive, and binding on all parties hereto. (This contract is operative only when countersigned by D. W. Jackson.) And said second party in consideration of the above has agreed and does hereby promise and agree to pay said first party five hundred ($500) dollars on the signing of this agreement, and that he will make sales of said pole and thill coupling strictly in accordance with the right and privilege herein granted."

Trial by jury was waived, and the case came on for trial before the court. The plaintiff offered the note, contract, and its articles of incorporation in evidence, and rested, its ownership of the patent being admitted. The defendant was then called as a witness in his own behalf, and after stating that he met the plaintiff's agent March 23, 1904, he was asked what conversation he had with the agent in regard to the business in question. Objection was made to the question on the ground that any oral arrangements were merged in the written agreement, and the court sustained the objection, and also ruled that the written agreement was a valid agreement. Thereupon the defendant offered to amend his answer by adding to it allegations to the effect that the contract between himself and the plaintiff was partly oral and partly in writing; that a part of the contract was that plaintiff agreed to make effort to obtain purchasers of territory under similar contracts; that it was understood that the right to sell terri-

tory and induce others to make similar contracts was, in fact, the sole consideration for the giving of the note, and that the right to sell couplings in Gates county was not of any real value, but was inserted for the purpose only of giving it an appearance of legality; that it was also agreed and understood that it should not be made known to persons who were to be induced to make like contracts how many counties remained unsold; that said contract, when carried out as contemplated, would result in a large number of people being cheated and defrauded by reason of there being no remaining counties unsold, and that the understanding was that the plaintiff was not to sell couplings, but that he was only to endeavor to make money by selling territory and inducing others to make like contracts, the result contemplated being that the first persons to go into the scheme would make money, and the persons who bought later would lose money. The amendment was rejected on the ground that it stated no defense, and offers to make proof of facts tending to support the proposed answer were also rejected. The testimony was then closed, and the court found that the transaction was valid and free from illegality and rendered judgment for the plaintiff for the amount unpaid on the note, from which judgment the defendant appealed.

For the appellant there was a brief by *Bundy & Varnum,* and oral argument by *R. E. Bundy.*

*Daniel H. Grady,* for the respondent.

WINSLOW, J. The general question presented is whether a transaction such as is alleged in the proposed amended answer is contrary to public policy. The plaintiff owned a valid patent upon a small device designed for use upon buggies and carriages which was of some utility. It was perfectly competent for the plaintiff to sell an exclusive right to vend the device in a given county and take a note therefor, and such note would be valid and enforceable in full (in the

absence of fraud), notwithstanding the fact that the value of
the right sold might be greatly overestimated. A valid patent
on a useful article is a sufficient consideration for a note,
though the patent may never be profitable. It was also com-
petent for the plaintiff to agree with the defendant that, in
case defendant induced others to purchase county rights of
sale, he should receive as his compensation a specified part
of the purchase price of such rights so purchased. Upon its
face the written contract entered into between the parties
went little, if any, further than to provide for these two
things, and, if the proposed defense were based upon the writ-
ten contract alone, we should entertain no doubt of the cor-
rectness of the judgment. The written contract is similar in
most of its essential features to the agency contract involved
in the case of *J. H. Clark Co. v. Rice,* 127 Wis. 451, 106
N. W. 231. In that case, however, the defendant stood upon
the written contract, while in the present case an entirely
different defense was proposed. By his amended answer he
proposed to set up a defense substantially as follows: That
the written contract, while containing some of the conditions
of the real arrangement made, was largely a mere cover exe-
cuted to give appearance of fairness and legality to the ar-
rangement; that neither party contemplated that the right to
sell the device in Gates county was of any real commercial
value, or that the defendant would make any effort to make
such sales; that the real arrangement was a joint scheme to
make money by selling similar nominal territorial rights to
others who should also become parties to the scheme and sell
similar territorial rights to still others, and so on—the idea
being that the process should go on in constantly broadening
circles as long as purchasers could be found who were foolish
enough to buy, and thus necessarily leave the ultimate pur-
chasers with nothing to show for their money or notes save
the practically worthless right to sell the patented device in
some backwoods county.

We are unable to regard such a project as a legitimate business enterprise. How large would be the number of purchasers who would be induced by the prospect of large returns for little labor to join the scheme it is impossible to say or even speculate. Each purchaser would be desirous to get back at least as much as he had invested. In order to do this, the first purchaser under the most favorable circumstances would have to sell rights aggregating $1,000, the second purchaser would have to sell rights aggregating $2,000, and thus the necessity of finding victims would increase in geometrical progression until the purchasers who are in the tenth place from the original purchasers must, in order merely to reimburse themselves, find others who would pay more than half a million dollars. Of course, it is not likely that the scheme would last so long as this, but, however long it lasts, it will infallibly leave a greater or less crowd of dupes at the end with no opportunity to recoup their losses because the bubble has at last burst. It contemplates an endless chain of purchasers, or, rather, a series of constantly multiplying endless chains, with nothing but fading rainbows as the reward of those who are unfortunate enough to become purchasers the moment before the collapse of the scheme. While contemplating large gains to the original promoters and early purchasers, it necessarily contemplates losses to the later purchasers; losses increasing in number with the greater success of the scheme. According to the allegations of the answer it was not an arrangement to sell patent couplings, nor even an arrangement to sell territorial rights in the patent, but an arrangement to become partners in an enterprise which under the form of selling territorial rights contemplated only the obtaining of easy money from others who were to be induced to pay in their money under the golden prospect of like recoupment from still others, until the mine was exhausted.

Such an enterprise we regard as contrary to public policy and void. Any contract which contemplates or necessarily

involves the defrauding or victimizing of third persons as its ultimate result must be *contra bonos mores.* Greenhood, Pub. Pol. 152. In its essential features it is not to be distinguished from the *Bohemian Oats Cases* or the *Coupon Cases,* where similar endless chains have been vigorously condemned by the courts. *McNamara v. Gargett,* 68 Mich. 454, 36 N. W. 218; *Davis v. Seeley,* 71 Mich. 209, 38 N. W. 901; *Merrill v. Packer,* 80 Iowa, 542, 45 N. W. 1076; *Schmueckle v. Waters,* 125 Ind. 265, 25 N. E. 281; *Shirey v. Ulsh,* 2 Ohio Cir. Ct. 401; *Hubbard v. Freiberger,* 133 Mich. 139, 94 N. W. 727; *Bonisteel v. Saylor,* 17 Ont. App. 505. Nor does it avail to say that the patented article was of some utility and value, inasmuch as under the allegations of the proposed answer it is alleged that the right to sell the patented couplings was of merely nominal commercial value on account of the great number of equally useful devices of the same nature, and was not considered in the transaction except as a means of giving it an appearance of validity and honesty. It goes without saying that, if the actual agreement between the parties was such as is in the amended answer set forth and was an agreement against public policy, the parties cannot, by reducing some unobjectionable parts of it to writing, prevent the reception of parol evidence to show the entire agreement, although it may be inconsistent with the written paper. The rule prohibiting the introduction of parol contemporaneous agreements to contradict or vary a written agreement has no application to such a situation. It may always be shown by parol that a written contract was made in furtherance of an illegal purpose or object. 1 Elliott, Ev. § 591.

It follows from these considerations that the proposed amended answer stated a defense and should have been allowed.

*By the Court.*—Judgment reversed, and action remanded for a new trial.