VARN v. GONZALES et al. (No. 667.)

(Court of Civil Appeals of Texas. El Paso. March 22, 1917. Rehearing Denied April 19, 1917.

1. CONTRACTS ☞113(1)—VALIDITY—FRAUD.

A contract, having for its object the practice of deception or fraud upon a third party to take advantage of confidential relations to draw him into a bargain by which the party undertaking to use his influence will receive a benefit from the seller, is void, but actual fraud is not necessary.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 521, 524–526, 528, 529.]

2. CONTRACTS ☞138(1)—ENFORCEMENT OF VOID CONTRACT.

If a contract is void for any reason, it is immaterial as to the ground rendering it void, since recovery cannot be had in any event.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 681.]

3. CONTRACTS ☞108(1)—"PUBLIC POLICY."

"Public policy" is determined by the spirit of the Constitution or law of the state where contract is made, or contrary to public morals, or illegal from any ·cause which equity will not enforce.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 498.

For other definitions, see Words and Phrases, First and Second Series, Public Policy.]

4. CONTRACTS ☞108(1), 123(1)—VALIDITY— CONTRARY TO PUBLIC POLICY.

All contracts induced by fraud or deceit are not thereby void unless contrary to public policy as tending to injure public service or obstruct justice or encourage immorality or affect freedom of marriage or in restraint of trade or contravening anti-trust or other laws affecting the public at large or contrary to statute of frauds or defrauding third persons.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 498, 571–573, 575.]

5. CONTRACTS ☞97(1)—VOID OR VOIDABLE— FRAUD.

If one with knowledge of facts constituting the other party's fraud or deceit can make the contract enforceable by assenting thereto, the contract is not void, but voidable.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 442, 443.]

6. VENDOR AND PURCHASER ☞33—VALIDITY OF CONTRACT—VENDOR'S FRAUD.

Where plaintiffs' agents conspired with defendant's agents to induce defendant to purchase land upon a secret agreement and misrepresentations, the contract was not void, but voidable.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 38, 40–43, 66.]

7. VENDOR AND PURCHASER ☞114—CONTRACT INDUCED BY FRAUD—RIGHT TO RESCIND.

Where purchasers retained lands after discovery of vendor's fraud and continued to cut timber thereon, the right to rescind the contract was waived, and purchasers were bound by the purchase note to extent of vendor's interest therein.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 202–204.]

8. VENDOR AND PURCHASER ☞314(3)—ACTION FOR PURCHASE PRICE—FAILURE TO RESCIND—ISSUE.

Where purchasers had precluded themselves from rescinding contract by their acts after learning of vendor's fraud, in an action for purchase price all other issues became immaterial.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 927.]

9. VENDOR AND PURCHASER ☞317—ACTION FOR PURCHASE PRICE—SUBMISSION OF SPECIAL ISSUES.

In action on a note given for purchase of land where a secret agreement between purchasers' agents and vendor's agents and misrepresentations were claimed, submission of special issues to jury held not erroneous.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 934–937.]

10. VENDOR AND PURCHASER ☞317—ACTIONS FOR PURCHASE PRICE—JUDGMENT SUSTAINED BY SPECIAL FINDINGS.

In action on a note given for purchase of land where a secret agreement between purchaser's agents and vendor's agents and misrepresentations were claimed, judgment for plaintiff held sustained by special findings.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 934–937.]

11. VENDOR AND PURCHASER ☞317—ACTION FOR PURCHASE PRICE—CONFLICT IN FINDINGS.

In action on a note given for purchase of land where a secret agreement between purchaser's agents and vendor's agents and misrepresentations were claimed, findings on special issues held not inconsistent.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 934–937.]

12. VENDOR AND PURCHASER ☞37(1)—RESCISSION FOR FRAUD—RELIANCE ON REPRESENTATIONS.

If purchasers inspected land for themselves and relied thereon and not upon vendor's representations alone, the contract could not be rescinded for vendor's fraud.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 54.]

13. OBSTRUCTING JUSTICE ☞6—EVIDENCE— WITHDRAWAL OF CROSS-ACTION.

The fact that defendants withdrew their cross-actions and plaintiff's attorney stated that he represented them and that they made no defense was not evidence of a conspiracy to pervert the course of justice, although suggestive thereof.

[Ed. Note.—For other cases, see ·Obstructing Justice, Cent. Dig. § 15.]

14. TRIAL ☞221—GIVING INSTRUCTION IN ATTORNEY'S ABSENCE.

The giving of oral instructions concerning the law applicable to any issue in the absence of attorneys constitutes reversible error, but this did not apply where the instructions did not relate to any·law question nor refer to merits of the case.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 507.]

15. VENDOR AND PURCHASER ☞318—ACTION FOR PURCHASE PRICE—JUDGMENT.

Where court found that a secret agreement existed between purchaser's agents and vendor's agents by which one-half of consideration was to be returned, judgment against purchaser for one-half of the amount of purchase note was proper.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 938–942.]

16. APPEAL AND ERROR ☞1068(1)—HARMLESS ERROR—INSTRUCTIONS CURED BY JUDGMENT.

Where court properly found that a secret agreement existed between vendor's agents and

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

purchaser's agents to induce the purchase. instruction putting too great a burden regarding such issue on the purchaser in action, on purchase note was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4225; Trial, Cent. Dig. § 525.]

17. APPEAL AND ERROR  1060(1)—HARMLESS ERROR—ARGUMENT OF COUNSEL.

Where defendant suffered no injury by counsel's argument to jury, the cause will not be reversed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135.]

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Suit by Amador Gonzales and others against George W Varn, administrator of W. W. Varn. Judgment for plaintiffs, and defendant appeals. Affirmed.

M. W. Stanton and Turney & Burges, all of El Paso, for appellant. F. G. Morris, T. A. Falvey, and B. Bryan, all of El Paso, for appellees.

HARPER, C. J. This suit was brought by Amador Gonzales on two promissory notes, the first for $15,000, payable January 1, 1909, the second for $3,195, payable September 29, 1910, against George W. Varn, administrator of W. W. Varn, deceased, John R. Fulkerson, Bernard Schuster, N. G. Buchoz, and G. C. Varn, joint makers. Fulkerson, Buchoz, and Schuster answered by general exceptions, general denial, and a cross-action for $5,000 against the Varns, and that they have judgment against the said G. C. Varn and the administrator of W. W. Varn for any moneys recovered by plaintiff. This cross-action was later withdrawn. G. C. Varn was not served, and the suit as to him was dismissed. The administrator answered by general and special exceptions, general denial, and plea in bar, as follows:

That on September 24, 1908, plaintiff Gonzales secured an option on a tract of timber land in the Republic of Mexico known as "Sierra de Cacaria" by written contract with Guadalupe, Isabel, and Anna Maria Chavez, for a consideration of 35,000 pesos for a term of one year. That thereafter, the said Gonzales combined, confederated, and conspired with their codefendants, Fulkerson, Buchoz, and Schuster for the fraudulent purpose of inducing these defendants to enter into negotiations for the purchase of said lands, and that, by false and fraudulent representations concerning the land, its value, and the value of the timber thereon, and further by false and fraudulent representation as to the contract Gonzales then had with the said Chavez sisters, etc., which they knew to be false, and said Varns believed them to be true, were induced thereby to enter into the following contract (as necessary to the points raised by this appeal): First, it declares that Amador Gonzales, first party, has

an option to purchase the Hacienda de Cacaria for a consideration of 35,000 pesos and other considerations to be paid, assigns and transfers same to John R. Fulkerson, Bernard Schuster, Numia G. Buchoz, W. W. Varn, and G. C. Varn, with the understanding that the said assignees acquire their rights as follows: Fulkerson to receive one-fourth interest, Schuster one-eighth, Buchoz one-eighth, W. W. Varn one-fourth, and the other one-fourth to G. C. Varn. The consideration for the above assignment shall be $10,000 cash (gold) and two notes, one for $15,000 (American gold) payable on or before January 1, 1909, and the other for $3,195, same coin, within two years, or the 28th of December, 1910, and to pay one Rocha 1,500 pesos and to further pay to the owners 35,000 pesos (Mexican silver), signed by all parties of interest or their attorneys in fact. That the codefendants Buchoz and Schuster were their agents under employment to acquire lands in Mexico upon commission, and that plaintiff knew that fact. That Fulkerson was plaintiff's agent to secure purchasers. That as a part of the fraudulent scheme the codefendants with the connivance and approval of plaintiff joined in with defendants Varns in the purchase as copartners under the aforesaid agreement to pay one-half the consideration, to wit, $36,445 gold, but, in truth and fact, the codefendants, by a secret agreement with plaintiff, were not in fact to pay any portion of said consideration, but that the execution of the notes sued upon by plaintiff by their codefendants was under and by virtue of a secret agreement with plaintiff that when same was paid that one-half thereof should be returned to the codefendants, but they were, nevertheless, to have their respective interests in the lands as indicated above. That upon receiving information of the secret agreement and upon full investigation as to the value of the lands, they forthwith rescinded the contract and notified the plaintiff and their codefendants that the notes would not be paid and that they would proceed no further under the contract, dissolved the partnership, and tendered back the possession of the lands.

For cross-action, alleges that they had paid certain sums upon the contract and had incurred expenses in and about the property before discovering the fraud and prayed judgment therefor.

The plaintiff, in reply to defendant's said answer, entered a general denial, and for special answer thereto alleged: That, if any agreement was entered into with the defendants, it was verbal, was before the writing, was abandoned and superseded by the written contract and notes sued on. That if plaintiff made any contract with any of the parties different from that made with others, he had a perfect right to do so under the laws of Mexico where the contract was made

and to be performed. That if the Varns ever had any right of rescission not admitted but denied, they did not exercise said right within a reasonable time, but that they held possession of the lands, cut timber and ties therefrom, and to sell same after they allege they made an offer to rescind, and specifically deny that defendants suffered the damages or expenses or the moneys set up in cross-action.

Tried by jury, submitted upon special issues, and upon the answers to same judgment was entered for plaintiff for one-half the face value of the notes, from which this appeal is prosecuted.

### Findings of Fact.

The court, in the decree, made the following finding:

"That as the jury failed to answer the question submitted to them as to the alleged secret agreement by plaintiff with Fulkerson, Buchoz and Schuster to the effect that only half the contract price for which the notes sued on were given in part payment should really be paid, or, if paid, that all above half of said contract price should be returned to said Fulkerson, Buchoz, and Schuster by plaintiff, no judgment for plaintiff could be rendered which did not assume the said agreement was in fact made, the court doth find that said agreement was made."

The exact agreement as testified to by the witnesses is that Fulkerson, Buchoz, and Schuster had not paid their portion of the first $10,000 payment, or that it had been returned to them, and that they were to get one-half of these other two notes when they were paid.

The facts further are: That Fulkerson was the agent of plaintiff Gonzales to secure a purchaser for the land in question, before and at the time the contract sued on was executed. That Buchoz and Schuster were the agents of the Varns to secure timber lands in Mexico, and that they all three acted together in bringing about the sale by Gonzales. That though the plaintiff and defendant Fulkerson were upon the witness stand, the testimony of defendants' witnesses in this regard was not denied by them. Under these circumstances, the other defendants under the contract quoted above were to be partners and receive the respective interests in the lands therein designated. That upon discovery of the fraudulent secret agreement, defendants Varns notified plaintiff that for that reason he repudiated the notes. The jury found the fact to be that, after this repudiation, the Varns continued in possession of the land and cut timber therefrom for two months.

### Conclusions of Law.

[1] Appellant, by assignments 1 to 5, inclusive, and propositions thereunder, urges that such an agreement is contrary to public policy and therefore void. The writer is strongly inclined to the view that this contract is void. The rule is that a contract which has for its object the practice of deception or fraud upon a third party to take advantage of confidential relations with him for the purpose of drawing him into a bargain by which the party undertaking to use his influence will secretly receive a benefit from the seller is void. 9 Cyc. 468; Twentieth Century v. Quilling, 130 Wis. 318, 110 N. W. 174; Bollman v. Loomis, 41 Conn. 581; Ferguson v. Gooch, 94 Va. 1, 26 S. E. 397, 40 L. R. A. 234.

It seems to me that the principle involved should not depend upon actual fraud for its application and enforcement, but it should alone depend upon whether the party seeking to enforce the contract secretly conspired with the active agents of the defendants to secretly bring about the contract through inducements and arguments made by himself or his active agent in concert with the active agents of the defendants, whereby they were to receive a secret benefit from such contract. If so, such means is in violation of private confidence and equally reprehensible with positive fraud. They are therefore within the same reason and mischief as contracts made and acts done with evil intent and are, for that reason, prohibited by law. The effect of the evidence and the finding of the trial court is that Fulkerson was the active agent of Gonzales, plaintiff; that Buchoz and Schuster were the agents of the Varns; and that they conspired, confederated together with the express consent of Gonzales, in the matter of showing the lands, talking over the advantages to be gained by the contract and as an inducement to the Varns to make the purchase propose a partnership and enter into it, whereby they get one-half of the lands by paying one-fourth of its value. But out of deference to the opinions of the majority of the court, I concur in the holding that the contract was voidable and not void.

[2-4] Appellant bases his contention that the contract was wholly void and against public policy upon the proposition:

"That the secret agreement between Gonzales, Fulkerson, Schuster, and Buchoz that one-half of the contract price for which the notes were given in part payment for the land should not, in fact, be paid to Gonzales, or, if paid, should be returned to Fulkerson, Schuster, and Buchoz, and that such secret agreement as to the return of a part of the price is such fraud as renders the contract one against public policy and therefore void."

If it is void for any reason, it would be immaterial as to the ground that renders it void, since recovery could not be had on a void contract, and since the facts constituting the fraud are specifically stated. Public polity is determined by the spirit of the Constitution or some law of a state of force where the contract is made, or contrary to public morals, or illegal from any cause which equity will not enforce. The contract, as made, does not contravene any provision of the Constitution or law, was not illegal, is not immoral in the sense that it is debasing to public morals, or mala in se. It certainly

would not be classed as a swindle made punishable, as claimed. Nor does the contract, even incidentally, in any way refer to or have to do with any right affecting people other than parties to the contract. All contracts, induced by fraud or deceit, are not void because of the fraud or deceit, but to render a contract void it must in its application at some point tend to injure public service, or obstruct the course of justice, or encourage immorality, or affect the freedom of marriage, or be in restraint of trade, or contravene anti-trust or kindred laws which affect in some way the public at large, or not be in writing where the law requires that it must be or in some way defraud third parties. These seem to be crucibles into which the facts must be placed to test the question of its being void or voidable.

[5, 6] The test as to whether the contract is void or voidable seems to be this: Could Varn, with a full knowledge of the facts constituting the fraud, have given his assent thereto and by so doing have made the contract enforceable? Could Varn have waived the fraud and had specific performance of the contract? The reason of the rule that makes fraud or deceit vitiate simple contracts or specialties seems to be that it takes from the one defrauded the opportunity to give his assent to the facts constituting the contract. But if he, with a knowledge of the facts, by yielding his assent thereto, can make the contract enforceable, the contract is not void, but only voidable at his will. If the contract violates any law or the spirit of it, Varn could not, with a full knowledge of the fraud or deceit, by yielding his assent, make it enforceable, because it is the law that destroys it and not the want of his assent. Allyn & Co. v. Willis & Bro., 65 Tex. 65; Wells v. Houston, 29 Tex. Civ. App. 619, 69 S. W. 188; Hallwood Cash Reg. Co. v. Berry, 35 Tex. Civ. App. 554, 80 S. W. 857; Ateburn v. Price, 152 S. W. 672; Shappirio v. Goldberg, 192 U. S. 232, 24 Sup. Ct. 259, 48 L. Ed. 419.

[7] Having decided that the contract was simply voidable and not void, whether it be on the ground of the secret agreement or on account of fraudulent misrepresentations concerning the land, its location or value or the value of the timber thereon, or as to the cost of cutting and shipping the timber, the only question then is: Did the defendants disaffirm the contract at the earliest practical time after the fraud was discovered, and retain or offer to retain possession? For if they retained possession and continued to use it after discovery of the fraud that induced the purchase, they waived their right to rescind and have affirmed or acquiesced in it and are bound by their contracts. There is no evidence in the record to the effect that the Varns ever gave as a cause for rescission that any person had misrepresented the land or timber, but only that upon discovery of the secret agreement, in December, 1908,

they for that reason repudiated the notes and offered to give possession of the land. And in this respect the jury has found in response to special issues that they, the Varns, knew about the secret agreement on or before January 4, 1909, and further found in response to another question that they continued to keep possession of and cut timber from the land for two months after that date. It must therefore be held that they affirmed the contract and are bound by it to the extent of Gonzales' interest in the note.

[8-11] The other assignments urge that the court erred in entering the judgment appealed from for the reason given in each assignment as indicated hereinafter in their numerical order:

Sixth, because the answers to the special issues did not warrant it. Seventh, because not supported by the verdict. Eighth, because it is in conflict with the verdict. Ninth and twelfth, because the jury failed to answer material issues. Tenth, because the jury failed to answer material issues, the court should have entered judgment of mistrial. Eleventh, the court erred in the finding in the judgment that all issues not answered were withdrawn. Thirteenth, because, in rendering judgment without the jury having passed upon the material issues, defendant was deprived of his right to have the jury determine the facts. Fourteenth, because there are irreconcilable conflicts in the findings of the jury. The sixth to fourteenth, inclusive, become immaterial by reason of the holdings under first to fifth, or are answered by the observations thereon, for the Varns, having precluded themselves from rescinding the contract by their acts after learning of the fraud, all other questions in the charge became immaterial. Fifteenth, because it was error to submit this issue: "Did the Varns, if they had information of the secret agreement, have such information before January 4, 1909?" The answer is, "Yes," and the sixteenth, following, urges that such answer is inconsistent with a failure of the jury to find whether or not the secret agreement existed at the time the contract was entered into. The answer to these latter two assignments is that if there was no secret agreement, nor other fraud in connection with the execution of the contract, which was the basis of the note sued on, defendant is liable because he has established no defense. But if the secret agreement did exist, and if there were fraudulent misrepresentations sufficient to vitiate the contract, it became obligatory upon defendant to seasonably repudiate, and rescind, if he would avoid the payment of the note, and this they did not do, but as held above by their acts subsequent to discovery of the fraud have precluded themselves from repudiating. Seventeenth is that the court erred in submitting the question: "Did the Varns retain possession and cut

ties from the land after discovery of fraud?" The answer was: "Two months." The eighteenth assignment urges that it was error to enter judgment for plaintiff upon this answer. It is apparent that there was not error in either respect. The nineteenth is to the same effect. The twentieth charges that it was error to submit the question: "Was Fulkerson agent of Gonzales or the Varns in bringing about the contract?" The answer is, "Agent of Gonzales." And the twenty-first charges that it was error for the court to consider these questions and answers for any purpose. The proposition is that this was an immaterial inquiry. Conceding that it was, it cannot be held to be reversible error. The twenty-fifth, twenty-sixth, twenty-seventh, and twenty-eighth are to the same effect. The twenty-second is that it was error to submit the question: "Did the Varns rely upon the statement of Gonzales as to the value of the timber lands or on their own inquiries and inspections?" The answer is: "Both."

[12] The twenty-third assignment urges that the court erred in considering this answer. The defendants having been on the ground and inspected for themselves, not having relied upon the representations of the other parties alone, he would not be permitted to rescind for that reason. But it is apparent that the only reason for repudiating the contract or notes was the discovery of the secret agreement, so it is apparent the question and answer were of no consequence. The twenty-ninth and thirtieth are to the same effect. The twenty-fourth is that it was error to submit: "Did the Varns yield possession of the lands to Miller or to J. E. Varn, Jr., without contest before their rights were forfeited for nonpayment in November, 1909?" This question was answered in the negative. This was an immaterial issue, but we fail to see how it constitutes reversible error and counsel have pointed out no reason. The twenty-fifth to thirty-first, inclusive, charge error in entering judgment for plaintiff without first having answers of the jury to issues submitted, such as "Were Fulkerson, Buchoz, and Schuster agents of the Varns in obtaining lands in Mexico?" As to whether they agreed to form a partnership; as to whether the Varns were deceived by the acts and statements of plaintiff and Fulkerson, Buchoz, and Schuster; as held above, the secret agreements charged or the fraudulent misrepresentations charged having the effect only to make the contract voidable, if reasonably rescinded after discovery of the fraud, and the jury having found that defendants did not do the latter, a finding upon the questions of fact as to fraud was immaterial. The thirty-second and thirty-third are that the court erred in rendering judgment without an answer to the following question: "Did the secret agreement constitute a conspiracy to defraud?" And

"is such conspiracy still in existence, and is this suit being prosecuted pursuant thereto?" The thirty-fourth assignment is to the same effect.

[13] After a careful review of the statement of facts, we have concluded that there is no evidence of a conspiracy to pervert the course of justice in the trial of this case; that Fulkerson, Buchoz, and Schuster should withdraw their cross-action; that they made no defense to plaintiff's cause of action; and that counsel for plaintiff asserted to the jury that he represented them, and that they made no defense, are suggestive but not evidence. The thirty-fifth, in refusing to submit: "Was the price to be paid by Gonzales to the owners of the land kept secret with intent to defraud Varns?" The thirty-sixth: "Would the Varns have executed the contract if they had known the price Gonzales was to pay for the land?" The thirty-seventh: "What was the difference between the amount Gonzales was to pay and the amount the Varns were to pay?" The thirty-eighth: "Did the land have any market value in Durango?" The thirty-ninth: "If so, what?" Fortieth and forty-first: "Was there a conspiracy between Gonzales, Buchoz, and Schuster?" "If so, were the Varns damaged thereby?" It was not error to refuse to submit or to withdraw such issues for the reasons given under assignments 1 to 5.

[14] The forty-second charges the court erred in orally instructing the jury in the absence of the defendant during the time the jury were considering the case, and upon the report of the jury that they were unable to agree upon a verdict, that they should answer such of the issues as they could agree upon. This was not error. If the court should give oral instructions concerning the law applicable to any issue in the case, or should give any instruction concerning the law in the absence of the attorneys, it would constitute reversible error. Railway Co. v. Kjellberg, 185 S. W. 430. The assignment shows that the jury were in open court, and the statement of the court to the jury did not apply to any law question in the case, nor does it in any sense refer to the merits of the case. Therefore the rule quoted does not apply.

[15] The forty-third is: That the court erred in sustaining in part the motion of plaintiff for judgment. There are several propositions urged by the appellant, but none of them seem to be pertinent, but raise questions applicable to other assignments. The exact matter to which this assignment applies is that the court sustained the plaintiff's motion to enter judgment in part, in that judgment was rendered for one-half the face value of the notes and interest, instead of for the full face value. Clearly, this was upon the theory that the court having found as a fact that the secret agreement existed; that only one-half of the notes

were in fact to be paid, because Fulkerson, Buchoz, and Schuster, under the agreement, though joint makers, were not to pay any part of the note sued on, to that extent the note was uncollectible. In this, we think the trial court was correct.

[16] The forty-fourth is that the following charge submitted at request of plaintiff upon the burden of proof constitutes reversible error:

"The defendant having pleaded fraud, * * * the burden of proof is upon him to establish by a preponderance of the credible evidence all the facts necessary to show such fraud, and, if you do not believe that he has established by a preponderance of the credible evidence such fraud as you are questioned about in question No. 1 of the court's charge, you will answer said question in the negative."

Question No. 1 asked whether or not the secret agreement, between the parties, charged in the petition and found to exist by the court in its judgment, in fact existed. As the case comes to this court, there is no question as to this secret agreement. Defendants' witnesses testified to it, and plaintiff did not deny it, and the trial court, upon the theory that it existed, rendered its judgment. So, if the charge put a greater burden upon the defendant in respect to that issue than the law justified, nevertheless he has his finding in favor of the fraud.

[17] The forty-fifth, forty-sixth, forty-seventh, and forty-eighth urge that the cause should be reversed because of statements made by counsel for plaintiff in argument to the jury. They had no application to the acts of defendants in ratification and continued possession and use of the premises after discovery of the fraud. So defendant has suffered no injury thereby.

For the reason given, the assignments are overruled, and cause affirmed.