STATE of Wisconsin, Plaintiff-Appellant,

v.

FORTUNE IN MOTION, INC., David Kalenuik, individually and as president of Fortune in Motion, Inc., Earl D. Boyles and Andrew W. Burling, Defendants-Respondents.

Court of Appeals

*No. 96–2002. Oral argument July 22, 1997.—Decided October 8, 1997.*

(Also reported in 570 N.W.2d 875.)

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Bruce A. Craig,* assistant attorney general and oral argument by *Bruce A. Craig.*

On behalf of the defendant-respondent, the cause was submitted on the brief and oral argument of *Earl D. Boyles*, pro se.

Before Snyder, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J.   The issue in this case is whether a marketing and promotion plan by Fortune in Motion, Inc., constituted an illegal chain distribution scheme pursuant to WIS. ADM. CODE § ATCP 122.01. At summary judgment, the trial court ruled that the Fortune in Motion plan did not violate the administrative rule. Based on this holding, the court dismissed the State's forfeiture and injunction action against Fortune in Motion, Inc., its president, David Kalenuik, and

two alleged primary Wisconsin promoters, Earl D. Boyles and Andrew W. Burling (Fortune in Motion). The State appeals.

We hold that a material issue of fact exists as to whether the Fortune in Motion plan constitutes a "chain distributor scheme" as defined in WIS. ADM. CODE § ATCP 122.02. We reverse the trial court's grant of summary judgment. We remand for further proceedings on the State's complaint.

BACKGROUND

*The Wisconsin Statutes and Administrative Code*

Section 100.20(1), STATS., prohibits unfair trade practices, and § 100.20(2) authorizes the Department of Agriculture to issue general orders forbidding certain trade practices. Pursuant to this authority, the Department enacted WIS. ADM. CODE § ATCP 122.01 which makes the use of a chain distributor scheme "in connection with the solicitation of business investments from members of the public" an unfair trade practice. This rule also recites the public policy which underpins the prohibition of chain distribution schemes:

> [T]he scheme serves as a lure to improvident and uneconomical investment. Many small investors lack commercial expertise and anticipate unrealistic profits through use of the chance to further perpetuate a chain of distributors, without regard to actual market conditions affecting further distribution and sale of the property purchased by them or its market acceptance by final users or consumers. Substantial economic losses to participating distributors have occurred and will inevitably occur

151

by reason of their reliance on perpetuation of the chain distributor scheme as a source of profit.

WISCONSIN ADM. CODE § ATCP 122.01.

WISCONSIN ADM. CODE § ATCP 122.02 defines a "chain distributor scheme" as follows:

> **(1)** "Chain distributor scheme" is a sales device whereby a person, upon a condition that the person make an investment, is granted a license or right to recruit for profit one or more additional persons who also are granted such license or right upon condition of making an investment and may further perpetuate the chain of persons who are granted such license or right upon such condition. A limitation as to the number of persons who may participate, or the presence of additional conditions affecting eligibility for the above license or right to recruit or the receipt of profits therefrom, does not change the identity of the scheme as a chain distributor scheme.
>
> (2) "Investment" is any acquisition, for a consideration other than personal services, of personal property, tangible or intangible, for profit or business purposes . . . .

### *The Fortune in Motion Marketing Plan*

The structure of the Fortune in Motion marketing plan is set out in its promotional materials.[1] The plan consists of four color-coded concentric circles with Red as the outer circle, then Orange, Yellow and finally Green as the inner circle. The participants in the marketing plan occupy positions on these circles. The Red outer circle has eight positions, the Orange circle four

---

[1] We have reviewed all of these materials including the Fortune in Motion, Inc., promotional video tape.

positions, the Yellow Circle two positions, and the Green inner circle one position. The participants are called "active brokers," which the promotional materials define as "[a]n individual that has earned a position beginning on the Red Circle by either a personal purchase or sale of product." An individual enters the marketing program through the Red Circle and then seeks to progress through the Orange and Yellow Circles, ultimately reaching the Green Circle.

In order to enter the Red Circle, the applicant must be sponsored by someone who is already an active broker. In addition, the applicant must also purchase or sell $500 worth of travel vouchers which can be purchased only from the Green Circle broker who receives all payments for the vouchers.[2] Thus, the incentive to enter the Fortune in Motion plan lies in the opportunity to become a Green Circle broker, the only level at which a participant receives any money.

Once admitted to the Red Circle, the new Red Circle broker, together with other brokers already in the circle or those who arrive thereafter, solicit and sponsor other persons as prospective Red Circle brokers. Once the eight positions on the Red Circle are filled, the circles divide and the eight Red Circle members become members of separate Orange Circles comprised of four brokers each. Likewise, the four members of the Orange Circle become members of separate Yellow Circles comprised of two brokers each; and the two members of the Yellow Circle each become a sole broker in separate Green Circles, replacing the existing Green Circle brokers who must then depart the plan.

---

[2] Fortune in Motion, Inc., also deals in other products. However, for purposes of the particular plan at issue in this case, the product utilized was travel vouchers.

However, the departed Green Circle broker may rejoin the plan by entering a new Red Circle.

Thus, the completion of a Red Circle team repeatedly triggers a division and multiplication of the circles. It also triggers the advancement of a participant to the next circle. Reaching the Green Circle represents the payoff since the Green Circle broker sells all of the vouchers and receives the $500 payment made by each of the eight new entrants to the Red Circle. Thus, the Green Circle broker receives a total payment of $4000. The Green Circle broker buys the eight vouchers from Fortune in Motion, Inc., for $62.50, representing an expense of $500. Less the initial $500 entrance payment, the Green Circle broker will have netted $3000 upon departing the plan.

## THE TRIAL COURT PROCEEDINGS

In October 1995, the State filed a complaint against Fortune in Motion seeking an injunction and civil forfeitures. The complaint alleged that Fortune in Motion, Inc., was a Canadian corporation and that Kalenuik, its president, was the principal proponent of the Fortune in Motion marketing plan which "promotes, offers and grants participation to interested recruits the opportunity to participate in a chain distributor scheme . . . ." The complaint additionally identified Boyles and Burling as principal promoters of the Fortune in Motion distribution scheme in Wisconsin. The State also filed a motion seeking a temporary injunction against the plan. The trial court denied the motion.

Fortune in Motion then brought the motion for summary judgment which is the subject of this appeal. Fortune in Motion argued that its marketing plan was not a "chain distributor scheme" under the definition

154

set forth in WIS. ADM. CODE § ATCP 122.02(1) because it did not require an individual to make an investment in order to gain entry into the program. The State responded with its own motion for partial summary judgment contending that the Fortune in Motion marketing plan was in violation of § ATCP 122.01. The State's motion reserved the issues of the appropriate forfeiture amount and the culpability of the individual defendants.

The trial court granted Fortune in Motion's summary judgment motion and denied the State's concurrent motion. The court stated:

> Participation in the multi-level marketing program of the Defendant Fortune in Motion is not conditioned upon an investment by its distributors who are permitted to participate by making sales to third parties. Such sales activities constitute personal services which the Administrative Code excludes from the definition of investment at Wisconsin Administrative Code ATCP Sec. 122.02(2). Fortune in Motion's program [is] outside the scope of the Wisconsin Administrative Code Chapter ATCP 122.

On June 14, 1996, the trial court entered a judgment dismissing the State's complaint. The State appeals the court's grant of summary judgment to Fortune in Motion. However, the State does not appeal the trial court's further ruling denying its motion for partial summary judgment.

## DISCUSSION

### Procedural History on Appeal

Before we address the appellate issue on the merits, we recite some of the procedural history regarding

this appeal. Previously, counsel for Fortune in Motion, Inc., and Kalenuik requested permission to withdraw. Counsel represented that his clients "[do] not wish to defend in this appeal and are not willing to expend any funds for attorneys to do so." Counsel also represented that "[d]efendant Fortune In Motion, Inc. no longer conducts any business within the State of Wisconsin." We granted this motion to withdraw.

In addition, separate counsel for Burling and Boyles also previously asked this court for permission to withdraw. This motion was based upon the clients' failure to cooperate with counsel and pay attorney's fees. We also granted this withdrawal request.

Following these orders, this court advised and warned all the respondents that they risked the sanction of summary reversal if they did not file respondents' briefs. Despite these warnings, Fortune in Motion, Inc., Kalenuik and Burling failed to file briefs. Therefore, as a sanction, we previously summarily reversed the judgments in favor of these parties. Boyles, however, has filed a pro se respondents' brief and he also appeared pro se at the oral argument in this case. While we appreciate Boyles' brief and oral argument presentations, they speak to his claim of an innocent intent and not to the legal issues before us.[3]

Thus, we do not have any respondents' appellate brief which meaningfully defends the trial court's ruling or addresses the issues raised by the State. However, the appellate record does include the extensive and well-stated trial court brief on behalf of Fortune in Motion, Inc., and Kalenuik in support of their motion for summary judgment. This brief was adopted by Burling and Boyles in support of their sepa-

---

[3] At oral argument, the State represented that it would be dismissing the complaint as to Boyles.

rate motion for summary judgment. We have considered this brief in reaching our decision in this matter.

*The Merits*

We review a summary judgment de novo, using the same standards and methodology applied by the trial court. *See Voss v. City of Middleton*, 162 Wis. 2d 737, 748, 470 N.W.2d 625, 629 (1991). "If the moving party has made a *prima facie* case for summary judgment, the court must examine the affidavits and other proof of the opposing party . . . to determine whether there exist disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial." *Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 477 (1980). The court must grant summary judgment if the pleadings, depositions, answers, admissions and affidavits show that there is no genuine issue of material fact and, as a matter of law, the moving party is entitled to judgment. *See Voss*, 162 Wis. 2d at 748, 470 N.W.2d at 629.

The parties' cross-motions for summary judgment raised the same issue: whether the Fortune in Motion marketing program is a "chain distributor scheme." WISCONSIN ADM. CODE § ATCP 122.02(1) defines a "chain distributor scheme" as follows:

> [a] sales device whereby a person, upon a condition that the person make an investment, is granted a license or right to recruit for profit one or more additional persons who also are granted such license or right upon condition of making an invest-

157

ment and may further perpetuate the chain of persons who are granted such license or right upon such condition.

The case law from the supreme court has broken this administrative rule out into five elements: "(1) A person must be granted a license or right, (2) in return for an investment, (3) which gives [the person] the right to recruit for profit, (4) persons to whom similar licenses are granted, and (5) in return for an investment." *HM Distribs. of Milwaukee, Inc. v. Department of Agric.*, 55 Wis. 2d 261, 270, 198 N.W.2d 598, 604 (1972).

The trial court ruled that the Fortune in Motion marketing program did not satisfy the definition of a chain distribution scheme under WIS. ADM. CODE § ATCP 122.02(1) because it did not *require* that an investment be made. The court rested its ruling on the definition of "investment" set out in WIS. ADM. CODE § ACTP 122.02(2):

"Investment" is any acquisition, for a consideration *other than personal services,* of personal property, tangible or intangible, for profit or business purposes, and includes, without limitation, franchises, business opportunities and services." [Emphasis added.]

The court noted that the evidence adduced at the hearing on the temporary injunction[4] together with the other summary judgment evidence revealed that a person could obtain entry to the Red Circle by selling the travel vouchers to third parties, rather than by making

[4] During the summary judgment proceedings, the parties cited abundantly to the evidentiary record made at the earlier hearing on the State's motion for a temporary injunction. The trial court did likewise in its ruling. We therefore consider that record as part of the summary judgment evidence.

a direct purchase of the vouchers from the Green Circle broker. The court concluded that such sales activity constituted "personal services," which is recognized as an exception to the definition of an "investment" under WIS. ADM. CODE § ATCP 122.02(2).

We fully accept that the sales efforts of a person seeking admission to the Red Circle represent "personal services" generally. However, we must focus on the meaning to be given "personal services" for purposes of WIS. ADM. CODE § ATCP 122.02(2). While no cases have defined "personal services" as used in this provision of the administrative code, our supreme court has defined the phrase in a different setting as follows:

> human labor such as is commonly rendered in return for a salary or a wage in the case of an employee and for "other compensation" in the case of an independent contractor or one not in an employee relationship. Such human labor must be in the nature of a service as distinguished from the end product or the fruit of the service.

*State v. Vodnik*, 35 Wis. 2d 741, 749, 151 N.W.2d 721, 725 (1967).[5] Although uttered in a different context, we conclude that this definition of "personal services" represents a commonly accepted meaning of the phrase. We adopt it for purposes of WIS. ADM. CODE § ATCP 122.02(2).

The summary judgment record here raises a serious question as to whether the sales efforts of a Red Circle applicant qualify under the "personal services" exception to an investment pursuant to WIS. ADM. CODE

---

[5] In *State v. Vodnik*, 35 Wis. 2d 741, 748–50, 151 N.W.2d 721, 724–25 (1967), the supreme court was construing the phrase "personal services" as used in a statute of limitations.

§ ATCP 122.02(2). In fact, a Red Circle applicant's ability to enter the plan does not even depend upon the rendering of any personal services to Fortune in Motion. Instead, the applicant may simply pay the $500 investment to the Green Circle broker without seeking a purchaser for the travel vouchers. Indeed, a witness who had been a Wisconsin promoter for Fortune in Motion testified at the temporary injunction hearing that she could not recall any instance in which a person had gained admittance to the Red Circle through the sales activity option.

The summary judgment record also reveals that it makes no difference to Fortune in Motion or the applicant whether the applicant gains admission to the plan by direct investment or by a sale of the vouchers to a third party. From the standpoint of Fortune in Motion, the profit motive lies in the repeated admission of new persons to the marketing plan so that the Green Circle broker is paid funds, a portion of which must be used to purchase the travel vouchers from Fortune in Motion. From the standpoint of the applicant, the profit motive lies in the hope of attaining Green Circle broker status. Neither of these goals is directly linked to the rendering of personal services to Fortune in Motion.

We also observe that the interplay between the applicant and Fortune in Motion under this particular plan is not akin to the relationship which traditionally exists in a personal services arrangement between an employer and employee, a principal and agent, or the parties to an independent contractor relationship. As we have noted, *Vodnik* holds that, regardless of the relationship, "[the] human labor must in the nature of a service as distinguished from the end product or the fruit of the service." *Vodnik,* 35 Wis. 2d at 749, 151 N.W.2d at 725. Here, the summary judgment record

allows for a conclusion that the end product—the payment of the $500 from the standpoint of Fortune in Motion, Inc., and the lure of the Green Circle from the standpoint of the applicant—not the rendering of personal services, drives this marketing plan.

In the trial court, Fortune in Motion likened itself to direct sales marketing companies such as Amway, Mary Kay Cosmetics and Shaklee which also depend on the recruitment efforts of its distributors as part of their distributors' sales activities. However, this record contains precious little of the specifics regarding the marketing plans of these entities. We properly base our decision on the facts pertinent to this case and the applicable law. Moreover, if this argument is correct, then the "personal services" exception subsumes the general rule barring recruitment. That result would obviously be unreasonable. In construing a statute, we must interpret it in such a way as to avoid absurd or unreasonable results. *See State v. Moore,* 167 Wis. 2d 491, 496, 481 N.W.2d 633, 635 (1992).

A chain or pyramid scheme rests on its ability to lure participants with an exponential return on their investment as long as new participants are recruited to fund the payoff to those already in the plan. Such a plan becomes illegal when it "contemplates an endless chain of purchasers, or . . . a series of constantly multiplying endless chains, with nothing but fading rainbows as the reward of those who are unfortunate enough to become purchasers the moment before the collapse of the scheme." *Twentieth Century Co. v. Quilling,* 130 Wis. 318, 324, 110 N.W. 174, 176 (1907). Here, one reasonable reading of the summary judgment record allows for the conclusion that those awaiting the ultimate payoff will find an ever dwindling, or perhaps

161

nonexistent, source from which to reap their reward. By outlawing chain distribution schemes, WIS. ADM. CODE § ATCP 122.02 seeks to avoid that situation.[6]

We reverse the trial court's grant of summary judgment to Fortune in Motion, and we remand for further proceedings on the State's complaint.[7]

*By the Court.*—Judgment reversed and cause remanded.

[6] Fortune in Motion also argues that other aspects of its sales activities do not violate the law. For instance, a person can become a distributor of Fortune in Motion's various product lines by simply purchasing a sales kit without joining the particular plan at issue in this case. However, as already noted, we properly limit our consideration in this case to the conduct which is alleged to violate the law. The fact that Fortune in Motion engages in other legal marketing plans does not per se immunize the conduct alleged in this case.

[7] Although our previous reversals of the summary judgment in favor of Fortune in Motion, Inc., Kalenuik and Burling were sanction based, our opinion in this case now represents the law of the case as against these parties as well.